**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

**Docket Number(s):** _____

**Motion for:** Emergency Motion for Immediate

Administrative Stay

_____

Caption [use short title]

Set forth below precise, complete statement of relief sought:

Administrative stay of order (D. Ct. Doc. 241)

authorizing disbursement of funds to

Plaintiff.

Carroll v. Trump

**MOVING PARTY:** President Donald J. Trump     **OPPOSING PARTY:** E. Jean Carroll

☐ Plaintiff          ☐ Defendant

☑ Appellant/Petitioner   ☐ Appellee/Respondent

**MOVING ATTORNEY:** Josh Halpern     **OPPOSING ATTORNEY:** Roberta Kaplan

[name of attorney, with firm, address, phone number and e-mail]

JH Legal PLLC, 1100 H Street NW, Suite 840     Kaplan Martin; 1133 Avenue of the Americas, Suite 1500,

Washington, DC 20005; (610) 405-5531;     New York, NY 10036; (212) 316-9500;

jhalpern@jhlegalpllc.com     rkaplan@kaplanmartin.com

Court- Judge/ Agency appealed from: SDNY - Hon. Lewis Kaplan

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes  ☐ No (explain): _____

_____

Opposing counsel's position on motion:
☐ Unopposed ☐ Opposed ☑ Don't Know
Does opposing counsel intend to file a response:
☐ Yes  ☐ No  ☑ Don't Know

Is the oral argument on motion requested?  ☐ Yes  ☑ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?  ☐ Yes  ☑ No  If yes, enter date: _____

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?  ☑ Yes ☐ No
Has this relief been previously sought in this court?  ☐ Yes ☑ No

Requested return date and explanation of emergency: Today, July 8

Lower court ordered disbursement of funds held in court registry despite terms of stipulation of the parties. Once disbursed, funds will almost certainly be transferred to third parties and rendered unrecoverable, threatening irreparable harm to Appellant.

**Signature of Moving Attorney:**

/s/ Josh Halpern     Date: July 8, 2026     Service : ☑ Electronic  ☐ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

E. JEAN CARROLL,

                *Plaintiff-Appellee,*

v.

PRESIDENT DONALD J. TRUMP,

                *Defendant-Appellant.*

No. 26-1840

**EMERGENCY MOTION OF PRESIDENT DONALD J. TRUMP**
**FOR AN IMMEDIATE ADMINISTRATIVE STAY**

**Relief Requested By: July 8, 2026**

Defendant-Appellant President Donald J. Trump respectfully moves this Court, on an emergency basis and pursuant to Federal Rule of Appellate Procedure 8, for an immediate administrative stay of the district court's order issued today, in order to preserve the status quo—and this Court's ability to grant effective relief—while the Court considers President Trump's forthcoming motion for a stay pending appeal, and/or, if necessitated by events, for an injunction pending appeal.

**BACKGROUND**

On May 9, 2023, a jury returned a verdict in favor of Plaintiff, and awarded her $5 million in compensatory and punitive damages. D. Ct. ECF No. 174. The

1

district court entered judgment on May 11, 2023. D. Ct. ECF No. 178. President Trump appealed and moved for a new trial. D. Ct. ECF Nos. 179, 204, 205.

On June 23, 2023, while the appeal was pending, the parties submitted a joint stipulation governing the use of a cash deposit in court as security in lieu of a supersedeas bond. The district court so ordered that stipulation the same day. D. Ct. ECF Nos. 209, 210. Under the Stipulation and Order, President Trump's deposit would serve as "other security" under Federal Rule of Civil Procedure 62(b).

Paragraph 8 of the Stipulation and Order provides that Plaintiff may collect only "[a]fter the latest of" three events:

> (a) the mandate issued by the Second Circuit in connection with the Appeal; (b) a denial of a timely filed petition for writ of certiorari to the Supreme Court (if any) in connection with the Appeal; or (c) upon the Supreme Court's granting of certiorari, an order of the Supreme Court in connection with the Appeal.

D. Ct. ECF No. 210 ¶ 8. Paragraph 9 further provides that collection may occur by motion or stipulation and order. *Id.* ¶ 9.

Paragraph 10 of the Stipulation and Order provides:

> If the Judgment is reversed and set aside completely, then the sums originally deposited with the Court by Defendant, together with any interest earned on such funds less any fees, shall be paid to Defendant. Collection by Defendant of the funds held by the Court may be accomplished by means of a motion or a stipulation and order, with notice served on the Clerk of this Court.

D. Ct. ECF No. 210 ¶ 10.

2

This Court affirmed the judgment on December 30, 2024, and denied rehearing en banc on June 13, 2025, with Judge Menashi and Judge Park dissenting. President Trump then filed a timely petition for a writ of certiorari. On June 29, 2026, the Supreme Court denied that petition.

The next day, Plaintiff filed her motion seeking immediate disbursement of the funds. D. Ct. ECF No. 233. Plaintiff's proposed order would direct the Clerk to disburse the $5,000,000 principal judgment and $779,783 in asserted post-judgment interest as of June 30, 2026. Plaintiff further asked that the district court shorten the standard briefing schedule under the Local Rules, giving President Trump seven days rather than the standard 14 days to respond to her motion. The district court granted the motion to shorten the briefing schedule the next day, without allowing for a response from President Trump. On July 3, President Trump filed a motion to amend the briefing schedule, in order to provide him with the full 14 days mandated by the Local Rules. The district court denied that motion the next day, on the July 4th holiday, without analysis or explanation.

President Trump filed a petition for rehearing of the denial of his petition for a writ of certiorari in the Supreme Court on July 6, 2026—18 days before it was due under the Supreme Court's Rules. That petition remains pending.

On July 7, President Trump filed a robust opposition to Plaintiff's motion for disbursement, stating in detail how ordering disbursement while the rehearing

3

petition remained pending would violate the plain terms of the parties' Stipulation and Order, and would inflict irreparable harm on President Trump.

On July 8—just hours after President Trump filed his opposition brief—the district court granted Plaintiff's motion, without analysis, and ordered that the funds held by the district court's Court Registry Investment System ("CRIS") be disbursed to Plaintiff. Because the order directs the release of the funds, President Trump seeks emergency relief directly from this Court.

### Compliance with Federal Rule of Appellate Procedure 8(a)

In his opposition to Plaintiff's motion for disbursement, President Trump requested that, if the district court were going to grant Plaintiff's motion for disbursement, the district court grant a stay pending appeal. President Trump's request for a stay pending appeal, which the district court did not even acknowledge, satisfied Federal Rule of Appellate Procedure 8(a)(1).

### ARGUMENT

**I.    The Court Should Enter an Immediate Administrative Stay to Preserve the Status Quo and This Court's Jurisdiction While It Considers President Trump's Forthcoming Motion.**

President Trump requests an immediate administrative stay of the district court's disbursement order issued today, in order to preserve the status quo, while this Court considers the merits of his forthcoming motion for a stay pending appeal, and/or, if necessitated by events, for an injunction pending appeal. An administrative

4

stay does not require any assessment of the merits of the appeal or of the stay motion. *See United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring in denial of application to vacate stay) ("Administrative stays do not typically reflect the court's consideration of the merits of the stay application."). An administrative stay asks only for the brief time necessary to allow the Court to rule in an orderly fashion, without the prospect of the funds being improperly and irrevocably disbursed before this Court has had an opportunity to consider the weighty issues presented. *See id.* (explaining that administrative stays "permit time for briefing and deliberation"); *Hassoun v. Searls*, 976 F.3d 121, 126 (2d Cir. 2020) (extending administrative stay "to ensure that it had adequate time to consider the government's [underlying stay] motion").

The need for an administrative stay here is acute. The district court's order directs the Clerk to disburse the funds, and once entered that order may be executed at any time. D. Ct. ECF No. 241. Plaintiff has repeatedly stated publicly that she intends to give away any money she collects from President Trump, and she reportedly has even created a foundation to distribute the funds. Once the funds leave CRIS and are distributed to third parties, they likely will not be recoverable— rendering any stay this Court might later grant, and any relief President Trump might later obtain on appeal, ineffective. A brief administrative stay imposes no comparable cost on Plaintiff. The funds remain secure in CRIS, they continue to

accrue interest, and the security exceeds the amount Plaintiff claims she is owed. The Court should therefore enter an immediate administrative stay pending its resolution of this motion. *See, e.g.*, *Hassoun*, 976 F.3d at 126; *Trump v. Vance*, No. 19-3204, 2019 WL 5703884 (2d Cir. Oct. 7, 2019).

## CONCLUSION

For the foregoing reasons, President Trump respectfully requests that this Court enter an immediate administrative stay of the district court's disbursement order pending the Court's resolution of President Trump's forthcoming motion for a stay pending appeal, and/or, if necessitated by events, for an injunction pending appeal.

Dated: July 8, 2026

Respectfully Submitted,

/s/ *Josh Halpern*
Josh Halpern
JH LEGAL PLLC
1100 H Street NW
Suite 840
Washington, DC 20005
(610) 405-5531
jhalpern@jhlegalpllc.com

*Counsel for President Donald J. Trump*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d) because it contains 1203 words. This motion also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d) because it was prepared using Microsoft Word in 14-point Times New Roman, a proportionally spaced typeface.

/s/ *Josh Halpern*
Josh Halpern

## APPENDIX OF EXHIBITS

1.  District Court Order Directing Disbursement of Deposited Funds From the Registry of the Court, D. Ct. Doc. 241 (July 8, 2026).......................................A1

2.  President Trump's Memorandum of Law in Opposition to Plaintiff's Motion for an Order Directing Disbursement of Deposited Funds From the Registry of the Court, D. Ct. Doc. 240 (July 7, 2026)................................................................A3

3.  Stipulation and Order Regarding the Use of a Cash Deposit in Court as Security in Lieu of a Supersedeas Bond, D. Ct. Doc. 210 (June 23, 2023)...................A18

**A1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>

E. JEAN CARROLL,

　　　　　　　*Plaintiff*,

v.

DONALD J. TRUMP,

　　　　　　　*Defendant*.

</td></tr>
</table>

> USDS SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: ___7/8/2026___

No. 22 Civ. 10016 (LAK)

## ORDER DIRECTING DISBURSEMENT OF DEPOSITED FUNDS FROM
## THE REGISTRY OF THE COURT

**WHEREAS**, on May 11, 2023, the Court entered a Judgment against Donald J. Trump in the total amount of $5,000,000.00 in favor of Plaintiff E. Jean Carroll (the "Judgment").

**WHEREAS**, on June 23, 2023, the Court so ordered a Stipulation and Order Regarding the Use of a Cash Deposit in Court as a Security in Lieu of a Supersedeas Bond, which authorized Tacopina, Seigel & DeOreo ("TSD"), on behalf of Defendant, to make a cash deposit into the registry of the Court in the sum of $5,550,000.00 pursuant to Federal Rule of Civil Procedure 67(a). ECF No. 210 (the "Stipulation and Order").

**WHEREAS**, the Stipulation and Order provided that "[t]he Clerk shall deduct from the income on the investment a fee consistent with that authorized by the Judicial Conference of the United States and set by the Director of the Administrative Office, *see* Local Civil Rule 67.l(b)(2)." ECF No. 210 ¶ 7.

**WHEREAS**, the Stipulation and Order provided that "[a]fter the latest of (a) the mandate issued by the Second Circuit in connection with the Appeal; (b) a denial of a timely filed petition for writ of certiorari to the Supreme Court (if any) in connection with the Appeal; or (c) upon the Supreme Court's granting of certiorari, an order of the Supreme Court in connection with the Appeal, Plaintiff may collect any moneys owed by Defendant to Plaintiff under the terms of the Judgment, as may be modified on appeal

or court order, from the amount deposited with the Court by Defendant, inclusive of any interest earned on such funds less any fees." ECF No. 210 ¶ 8.

WHEREAS, on June 28, 2023, Defendant's then-counsel, Tacopina, Seigel & DeOreo, deposited $5,550,000.00, into the Court Registry Investment System ("CRIS") on June 28, 2023. Minute Order, June 28, 2023.

WHEREAS, on June 29, 2026, the Supreme Court of the United States denied Defendant's petition for a writ of certiorari.

NOW, THEREFORE IT IS HEREBY ORDERED, that:

1. The Clerk is respectfully directed to disburse from CRIS the value of the principal Judgment, which amounts to $5,000,000.00, to the IOLTA account of Kaplan Martin LLP on behalf of Plaintiff E. Jean Carroll, using the disbursing information that has been transmitted to the Clerk of Court by counsel for Plaintiff.

2. The Clerk is further respectfully directed to disburse from CRIS the value of the post-judgment interest, computed pursuant to 28 U.S.C. § 1961, that has accrued as of the date of this order, to the IOLTA account of Kaplan Martin LLP on behalf of Plaintiff E. Jean Carroll, using the disbursing information that has been transmitted to the Clerk of Court by counsel for Plaintiff.

3. The Clerk is further respectfully directed to terminate Dkt 232.

SO ORDERED.
Dated: July 8, 2026

_____
Lewis A. Kaplan
United States District Judge

**A3**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

E. JEAN CARROLL,

*Plaintiff,*

v.

PRESIDENT DONALD J. TRUMP,

*Defendant.*

No. 1:22-cv-10016 (LAK)

---

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER DIRECTING DISBURSEMENT OF DEPOSITED FUNDS FROM THE <u>REGISTRY OF THE COURT</u>**

President Donald J. Trump opposes Plaintiff E. Jean Carroll's motion for an order directing immediate disbursement of millions of dollars from the Court Registry Investment System ("CRIS"). Specifically, Plaintiff asks this Court to release $5,779,783 from the Court's accounts, while President Trump's timely petition for rehearing remains pending before the Supreme Court. Plaintiff's request violates the plain terms of the parties' Stipulation and Order, and would cause President Trump irreparable harm while not improperly disadvantaging Plaintiff in any way.

Plaintiff makes no attempt to parse the Stipulation and Order—because its plain text forecloses her request. Paragraph 8 permits collection only "[a]fter the latest of" three specified appellate events. ECF No. 210 ¶ 8. One of those events is the final denial of a petition for certiorari, *id.* ¶ 8(b), and another is the Supreme Court's entry of an order after granting certiorari "in connection with the Appeal," *id.* ¶ 8(c). Both provisions confirm that collection cannot begin while proceedings remain pending before the Supreme Court, which is currently the case.

Subparagraph 8(c) remains a live condition unless and until the Supreme Court denies rehearing, because a grant of rehearing would place the case back before the Court, and would

1

**A4**

require a further order "in connection with the Appeal." Additionally, Subparagraph 8(b) independently forecloses collection because a timely rehearing petition keeps the certiorari process pending until the Supreme Court finally disposes of that petition. Thus, whether viewed through Subparagraph 8(c), which cannot be ruled out as the operative provision until the Court acts on rehearing, or through Subparagraph 8(b), which requires final disposition of the certiorari process, Paragraph 8 does not permit collection while the rehearing petition remains unresolved. Further, due to the petition for rehearing being timely filed with the Supreme Court by President Trump, Paragraph 10 of the Stipulation and Order, which covers repayment of the deposited funds, plus interest, minus court fees, to President Trump should the original judgment be reversed, remains operative as an option. That mandates that Plaintiff's motion be denied since it would materially disrupt the Stipulation and Order, by making it impossible to implement Paragraph 10. The status quo must remain until when and if Paragraph 10 can no longer be put into operation.

On the other hand, Plaintiff's incorrect reading of the Stipulation and Order would require immediate disbursement even if the Supreme Court grants rehearing and vacates the judgment, which would be a clear violation of Paragraph 10 specifically, and the Stipulation and Order as a whole. Plaintiff's position contradicts the plain text and purpose of a security arrangement designed to preserve the status quo during appellate review. Plaintiff faces only temporary delay, *fully compensable by interest*, unless judgment is overturned on appeal. That has been the status quo throughout the appellate process in this case, and it must remain so pending resolution of the petition for rehearing. President Trump, however, faces unrecoverable loss: Plaintiff has repeatedly stated that she intends to give away all funds that she collects from him, and once those funds are distributed to third parties, they likely cannot be recovered.

2

**A5**

The motion should be denied, or, at the very least, held in abeyance pending the Supreme

Court's disposition of the rehearing petition.

## BACKGROUND

On May 9, 2023, a jury returned a verdict in favor of Plaintiff and awarded her $5 million

in compensatory and punitive damages. ECF No. 174. That verdict was premised, in part, on a

claim that would have been barred by the statute of limitations had the State of New York not

enacted a statute that was largely designed to target President Trump. This Court entered judgment

on May 11, 2023. ECF No. 178. President Trump appealed and moved for a new trial. ECF Nos.

179, 204, 205.

On June 23, 2023, while the appeal was pending, the parties submitted a joint stipulation

governing the use of a cash deposit in court as security in lieu of a supersedeas bond. The Court

so ordered that stipulation the same day. ECF Nos. 209, 210. Plaintiff's motion recognizes that,

under the Stipulation and Order, President Trump's deposit would serve as "other security" under

Federal Rule of Civil Procedure 62(b).

Paragraph 8 of the Stipulation and Order provides that Plaintiff may collect only "[a]fter

the latest of" three events:

> (a) the mandate issued by the Second Circuit in connection with the Appeal; (b) a
> denial of a timely filed petition for writ of certiorari to the Supreme Court (if any)
> in connection with the Appeal; or (c) upon the Supreme Court's granting of
> certiorari, an order of the Supreme Court in connection with the Appeal.

ECF No. 210 ¶ 8. Plaintiff's motion quotes this language and relies on it as the basis for

disbursement. Paragraph 9 further provides that collection may occur by motion or stipulation and

order. *Id.* ¶ 9.

Paragraph 10 of the Stipulation and Order provides:

3

**A6**

> If the Judgment is reversed and set aside completely, then the sums originally deposited with the Court by Defendant, together with any interest earned on such funds less any fees, shall be paid to Defendant. Collection by Defendant of the funds held by the Court may be accomplished by means of a motion or a stipulation and order, with notice served on the Clerk of this Court.

ECF No. 210 ¶ 10.

The Second Circuit affirmed the judgment on December 30, 2024, and denied rehearing en banc on June 13, 2025, with Judge Menashi and Judge Park dissenting. President Trump then filed a timely petition for a writ of certiorari. On June 29, 2026, the Supreme Court denied that petition. Plaintiff filed this motion the next day, seeking immediate disbursement of the funds. Her proposed order would direct the Clerk to disburse the $5,000,000 principal judgment and $779,783 in asserted post-judgment interest as of June 30, 2026.

President Trump has filed a timely petition for rehearing in the Supreme Court. *See* Exhibit 1. That petition remains pending.

**I.     Disbursement Is Premature Because President Trump's Timely Supreme Court Rehearing Petition Remains Pending**.

Plaintiff's motion wrongly and improperly treats the Supreme Court's denial of certiorari as the last word, even though President Trump has timely invoked the Supreme Court's prescribed rehearing procedure. ECF No. 233. Paragraph 8 does not authorize disbursement while President Trump's timely Supreme Court rehearing petition remains pending, and Paragraph 10 prohibits it. Because Plaintiff's argument conflicts with the plain language, context, and purpose of Paragraphs 8 and 10, the Court should deny her motion.

4

**A7**

### A. Disbursement Cannot Occur Under Section 8(c) of the Stipulation and Order Before the Supreme Court Acts Upon President Trump's Petition for Rehearing.

Courts interpret stipulations pursuant to "settled principles of contractual interpretation." *Tobin v. Gluck*, 137 F. Supp. 3d 278, 293 (E.D.N.Y. 2015) (quotation omitted). When interpreting a contract, "courts must effectuate its plain language." *Seabury Constr. Corp. v. Jeffrey Chain Corp.*, 289 F.3d 63, 68 (2d Cir. 2002). Here, the plain language of the Stipulation and Order conditions collection on the occurrence of certain conditions. *See* ECF No. 210 ¶ 8. Thus, as a matter of contract law, collection cannot occur until those conditions have been satisfied. *Cauff, Lippman & Co. v. Apogee Fin. Grp., Inc.*, 807 F. Supp. 1007, 1022 (S.D.N.Y. 1992) ("Where the performance of either party or the validity of the contract itself is conditioned upon the occurrence of some event, the contractual obligation does not arise if that event does not occur."). Here, the plain language, structure, and purpose of Paragraph 8 all point to the same conclusion: Subparagraph 8(c) remains potentially operative while President Trump's timely rehearing petition is pending, and Plaintiff may not collect before the Supreme Court resolves that petition.

*Text*. Under the plain language of Paragraph 8, the conditions precedent to collection have not yet been satisfied. The Stipulation and Order permits collection only "[a]fter the latest of" three distinct events. ECF No. 210 ¶ 8. Under the plain language of this provision, collection is not triggered merely by the occurrence of one (or even two) of these events. *Cf. Ciaramella v. Reader's Digest Ass'n*, 131 F.3d 320, 324 (2d Cir. 1997); *GE Med. Sys., S.C.S. v. Symx Healthcare Corp.*, No. 18-20922, 2019 WL 3409489, at *6 (S.D. Fla. May 17, 2019); *Morris v. Haren*, 52 F.3d 947, 949 (11th Cir. 1995). Paragraph 8 permits collection—*i.e.*, provides that "Plaintiff may collect"— only "after the latest of" *all* of the enumerated events. ECF No. 210 ¶ 8.

Plaintiff's motion rests on her wrongful contention that the second enumerated event— "denial of a timely filed petition for writ of certiorari"—has occurred. *See* ECF No. 210 ¶ 8(b). It

5

**A8**

has not. Plaintiff ignores that Paragraph 8 includes a third potentially triggering event: "upon the Supreme Court's granting of certiorari, an order of the Supreme Court in connection with the Appeal." *Id.* ¶ 8(c). A timely petition for rehearing from the denial of certiorari is part of the Supreme Court proceedings in connection with that same appeal. *See* Sup. Ct. R. 44.2. If the Supreme Court grants the petition for rehearing and then grants certiorari, as it should, Subparagraph 8(c) would be the governing condition that dictates the timing of collection by Plaintiff, if the judgment is not overturned. Until the Supreme Court decides the pending petition for rehearing, the Court cannot conclude that "the latest of" the conditions enumerated in Paragraph 8 has occurred. ECF No. 210, ¶ 8. As a result, under the plain language of Paragraph 8, collection is premature and impermissible.

*Context.* The structure of Paragraph 8 confirms that reading. Paragraph 8 must be construed as a whole, with each subparagraph read in context rather than in isolation. *See MJM Visions, LLC v. CSC Serviceworks, Inc.*, No. 18-cv-4452, 2019 WL 2451936, at *3 (E.D.N.Y. June 12, 2019) ("Contracts are to be considered as whole and their language interpreted in context."). Read together, Subparagraphs 8(a), 8(b), and 8(c) establish a sequential framework keyed to how appellate review unfolds: if review ends with the Second Circuit's mandate, Subparagraph 8(a) governs; if a timely certiorari petition is filed, and the petition and rehearing are fully denied, Subparagraph 8(b) governs; and if certiorari is granted, Subparagraph 8(c) governs. See ECF No. 210 ¶ 8. It is impossible to currently know whether 8(b), 8(c), or 10 will become the operative provision, and thus Plaintiff's motion must be denied.

That framework explains why no party treated the Second Circuit's July 10, 2025, mandate as triggering collection under Subparagraph 8(a). Once President Trump timely sought Supreme Court review, it became necessary to determine whether Subparagraph 8(b) or 8(c)—rather than

6

8(a)—would supply the operative condition if judgment were not reversed, which would trigger Paragraph 10. The same logic applies now. Plaintiff cannot treat the Supreme Court's initial denial of certiorari as conclusively triggering Subparagraph 8(b), while a timely petition for rehearing remains pending. Until that petition is resolved, including after rehearing, the Supreme Court could grant rehearing and then grant certiorari, in which case Subparagraph 8(c) or Paragraph 10 would govern. Thus, read in context, Paragraph 8 postpones collection, if any, until the Court can determine which appellate-review provision supplies the "latest of" the relevant events. ECF No. 210, ¶ 8. That determination cannot be made until when and if the Supreme Court disposes of the pending rehearing petition.

*Purpose*. This proper reading also gives effect to the Stipulation and Order's purpose. President Trump deposited cash security to preserve the status quo while appellate review proceeded. Plaintiff remains fully protected by that security today. Releasing the funds now would improperly dissolve the security before the Supreme Court completes the rehearing process expressly authorized by its rules. *See Litton Sys., Inc. v. AT&T*, 568 F. Supp. 507, 510 (S.D.N.Y. 1983) ("Thus, to further the stay's obvious goal of permitting full judicial review of this case prior to execution of the massive judgment, it seems sensible to give effect to that alternative provision, rather than the 90-day limitation."); *see also* Sup. Ct. R. 44.2.

By contrast, Plaintiff's interpretation of Paragraph 8 would lead to unreasonable results, including wrongly mooting out Paragraph 10. Under settled principles of contractual interpretation, "a contract should not be interpreted to produce an absurd result." *Professional Fighters League, LLC v. Takeover Indus., Inc.*, 770 F. Supp. 3d 718, 723-24 (S.D.N.Y. 2025) (quotation omitted). Under Plaintiff's interpretation, Paragraph 8 would mandate collection now, *even if* the Supreme Court were to grant President Trump's petition for rehearing, grant the petition

for writ of certiorari, and reverse on the merits, which would then make Paragraph 10 operative, and cause for funds to be returned to President Trump. Such result of Plaintiff's interpretation would be absurd: Plaintiff would not be entitled to the judgment, and yet those amounts would have been distributed to her without any realistic chance of recoupment. This untenable result directly conflicts with principles of contractual interpretation. *See id.* Those principles instead mandate the conclusion that Paragraph 8 does not permit collection before the Supreme Court acts upon President Trump's pending petition for rehearing.

### B. Under Subparagraph 8(b), a Certiorari Denial Does Not Trigger Disbursement While Rehearing Remains Pending.

Further, Subparagraph 8(b) has not yet been triggered, because President Trump's pending petition for rehearing is a component of the certiorari process contemplated by the Supreme Court's Rules. Subparagraph 8(b) refers to the "denial of a timely filed petition for writ of certiorari," and it cannot be read to require disbursement before that denial is final in any practical sense—*i.e.*, while a timely petition for rehearing remains pending under the Supreme Court's own rules. *See* Sup. Ct. R. 44.2. Until the Supreme Court resolves that petition, its denial of certiorari remains subject to reconsideration by the Court itself. *Id.*

Plaintiff's contrary reading would produce an unreasonable and absurd result. It would require immediate distribution even though the Supreme Court could still grant rehearing, grant certiorari, and ultimately reverse. In that scenario, Plaintiff would have collected on a judgment that President Trump no longer owed, and the security would have been released before the appellate process had concluded. That would, again, be a total violation of Paragraph 10, and thus the Stipulation and Order as a whole. The Stipulation and Order cannot be construed to compel that result. See *Tobin*, 137 F. Supp. 3d at 293; *Professional Fighters League*, 770 F. Supp. 3d at

8

**A11**

723–24. Rather, Subparagraph 8(b) should be read to permit collection only after the certiorari denial is no longer subject to a timely rehearing petition, which it currently still is.

Nor does Supreme Court Rule 16.3 compel a different result. Plaintiff invokes Rule 16.3 because it provides that an order denying certiorari "will not be suspended pending disposition of a petition for rehearing except by order of the Court or a Justice." ECF No. 233, at 7. But that rule addresses the internal effect of the Supreme Court's denial order; it does not interpret the parties' Stipulation and Order, require disbursement of funds from a district-court registry, or deprive this Court of authority to properly maintain the security until the rehearing petition is resolved. The issue here is not whether the Supreme Court has formally denied rehearing of its denial order—it has not done so. It is whether Paragraph 8 requires this Court to release secured funds before the Supreme Court has completed the rehearing process that its Rules expressly authorize. It does not. The Stipulation and Order in fact mandates that status quo be maintained and Plaintiff's motion be denied.

C.     **Plaintiff's Position Cannot Be Reconciled with Paragraph 10 of the Stipulation and Order.**

Plaintiff's wrong interpretation of Paragraph 8 cannot be squared with Paragraph 10 of the Stipulation and Order because it creates an irreconcilable contradiction within the document. Contracts must be read as a whole, and courts reject interpretations that cause provisions to conflict or nullify one another. *See, e.g.*, *Kinek v. Paramount Communications, Inc.*, 22 F.3d 503, 509 (1994) ("[W]ell established principles of contract construction . . . require that all provisions of a contract be read together as a harmonious whole, if possible."). Plaintiff's incorrect reading would conflict with these bedrock interpretive principles by rendering Paragraph 10 internally inconsistent with Paragraph 8.

9

Paragraph 10 provides that if the Judgment is "reversed and set aside completely," the deposited sums, with interest less fees, "shall be paid to Defendant." Yet under Plaintiff's interpretation, those same funds could already have been disbursed to Plaintiff before appellate review is complete. That creates a direct contradiction: Paragraph 10 presumes the funds remain available with the Court for return to Defendant after the appellate process is final, while Plaintiff's reading would allow those funds to be removed from the Court's control altogether. Both propositions cannot be true at the same time.

The Stipulation and Order should instead be read to avoid this contradiction, and give effect to both provisions. Paragraphs 8 and 10 operate in tandem: Paragraph 8 does not authorize disbursement while Supreme Court review remains pending, as it does here, and Paragraph 10 ensures that the funds remain available for return to Defendant if the judgment is ultimately reversed and set aside. The motion must be rejected.

## II.    At Minimum, Any Uncertainty Should Be Resolved By Preserving The Status Quo Pending The Supreme Court's Disposition Of The Rehearing Petition.

To the extent that the Court concludes that Paragraph 8 is ambiguous, that Paragraph 10 is not mooted out by the Plaintiff's reading, or that the certiorari denial triggered Plaintiff's ability to seek disbursement, all of which would be error, the Court should maintain the status quo until the Supreme Court resolves President Trump's rehearing petition. The governing stay factors strongly support that modest relief.

Courts consider four factors in determining whether to grant a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quotation omitted). The Second Circuit applies

10

**A13**

those factors on "a sliding scale," under which "more of one excuses less of the other." *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006) (quotation omitted). "The necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other stay factors." *Id.* (cleaned up). Further, "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay." *Id.* (cleaned up). The factors clearly favor a stay.

*First*, President Trump has presented a serious petition for rehearing. Plaintiff treats Supreme Court rehearing as though it were imaginary. It is not. Supreme Court Rule 44.2 expressly authorizes rehearing from a denial of certiorari based on "intervening circumstances of a substantial or controlling effect" or "other substantial grounds not previously presented." Sup. Ct. R. 44.2. Plaintiff's own motion quotes the rule. President Trump's rehearing petition invokes that rule and relies on the grounds specified by the rule. This Court need not decide whether the Supreme Court will grant rehearing.[1] It need only recognize that the petition is timely, authorized by the Supreme Court's rules, and pending, all of which is the case.

*Second*, President Trump will be irreparably harmed absent a stay. Plaintiff seeks immediate disbursement of a multimillion-dollar judgment while Supreme Court rehearing

---

[1] Rehearing is not some legal impossibility. The Supreme Court has granted rehearing in multiple cases, including *Oklahoma v. United States*, 145 S. Ct. 2836 (2025); *Abdirahman v. United States*, 585 U.S. 1046 (2018); *Kent Recycling Services, LLC v. U.S. Army Corps of Engineers*, 578 U.S. 1019 (2016); *Johnson v. Alabama*, 136 S. Ct. 1837 (2016); *Liberty University v. Geithner*, 568 U.S. 1022 (2012); *Melson v. Allen*, 561 U.S. 1001 (2010); *Boumediene v. Bush*, 551 U.S. 1160 (2007); *Adams v. Evatt*, 511 U.S. 1001 (1994); *Harris v. Reederei*, 451 U.S. 965 (1981); *Place v. Weinberger*, 426 U.S. 932 (1976); *McKenzie v. Director*, 408 U.S. 916 (1972); *United States v. Ohio Power Co.*, 353 U.S. 98, 98-99 (1957); *R. Simpson & Co. v. Commissioner*, 319 U.S. 778 (1943); and *Crane-Johnson Co. v. Commissioner*, 309 U.S. 692 (1940). The Court must not ignore the grave and irreparable consequences of disbursing funds that may never be recovered.

**A14**

remains pending. If the funds leave CRIS now, and the Supreme Court later grants rehearing and alters the posture of the case, President Trump is likely to never recover the funds.

That risk is not speculative. Plaintiff has repeatedly stated publicly that she intends to give away money collected from President Trump. *See, e.g.*, Tom Sanders, *E. Jean Carroll Reveals Why She'll Give Away Her $80M From Trump: 'To P\*\*\* Him Off,'* THE DAILY BEAST (July 1, 2025);[2] Mandy Taheri, *E. Jean Carroll on 'Comedy Gold' of Trump Trial and How She'll Spend $83M*, NEWSWEEK (June 18, 2025);[3] Jenna Amatulli, *E. Jean Carroll aims to give defamation money 'to something Trump hates,'* THE GUARDIAN (Jan. 29, 2024);[4] Peter Charalambous, *E. Jean Carroll says she plans to use $83 million on 'something Donald Trump hates,'* ABC NEWS (Jan. 29, 2024);[5] Holly Patrick, *E. Jean Carroll vows to use $83m defamation damages on 'something Trump hates,'* THE INDEPENDENT (Jan. 29, 2024).[6] She reportedly has even created a foundation to distribute the funds. *See Taheri*, *supra*. Once funds are distributed to third-party organizations, they likely will not be recoverable.

That is the definition of irreparable harm. The Supreme Court has recognized that although "the loss of money is not typically considered irreparable harm," the analysis changes where the funds "cannot be recouped" and are therefore "irrevocably expended." *Nat'l Institutes of Health v. American Public Health Ass'n*, 145 S. Ct. 2658 (2025) (quoting *Philip Morris USA Inc. v. Scott*,

---

[2] *Available at* https://www.thedailybeast.com/e-jean-carroll-reveals-why-shell-give-away-her-80m-from-trump-to-p-him-off/.

[3] *Available at* https://www.newsweek.com/e-jean-carroll-comedy-gold-trump-trial-how-shell-spend-83m-2087074.

[4] *Available at* https://www.theguardian.com/us-news/2024/jan/29/e-jean-carroll-trial-money-trump-defamation.

[5] *Available at* https://abcnews.com/GMA/Culture/jean-carroll-plans-83-million-donald-trump-hates/story?id=106751516.

[6] *Available at* https://www.independent.co.uk/tv/news/donald-trump-defamation-e-jean-carroll-b2486858.html.

561 U.S. 1301, 1304 (2010) (Scalia, J., in chambers)). Courts routinely recognize irreparable harm when a party faces unrecoverable financial loss. *See, e.g., NFIB v. OSHA*, 595 U.S. 109, 120 (2022) (per curiam) (granting stay where applicant faced threat of billions of dollars in unrecoverable costs); *Railway Labor Executives' Ass'n v. Gibbons*, 448 U.S. 1301, 1305 (1980) (Stevens, J., in chambers) (noting that a preliminary injunction avoids "irreparable damage" by preventing "a chain of events that would lead to substantial payments that would be . . . unrecoverable"); *In re NTE Connecticut, LLC*, 26 F.4th 980, 991 (D.C. Cir. 2022) (stay pending rehearing prevented FERC from imposing "unrecoverable losses of millions of dollars"); *GEICO v. Tolmasov*, 602 F. Supp. 3d 380, 390 (E.D.N.Y. 2022) (finding irreparable harm where there were "imminent and non-speculative risks" of "potentially unrecoverable" expenditures). Such irreparable harm is precisely the risk here.

*Third*, a proper stay will not materially harm Plaintiff. Her money judgment remains fully secured. The funds remain in CRIS. Her own proposed order seeks disbursement not only of the judgment's principal, but also interest. If the Supreme Court denies rehearing, which it should not do, Plaintiff can be paid then with any interest to which she is entitled. Delay compensable by interest is not irreparable harm—particularly because the security in place here is more than sufficient. As of June 29, 2026, the CRIS balance was $6,367,384.33, well above the $5,779,040.39 Plaintiff asserts was owed as of that date. Maintaining the funds in CRIS until the Supreme Court fully decides the petition for rehearing therefore completely protects Plaintiff, while avoiding irreparable harm to President Trump. Plaintiff loses nothing that cannot be compensated by interest; President Trump faces the real risk of losing funds that will likely never be recovered.

**A16**

*Fourth*, the public interest favors preserving the status quo until Supreme Court rehearing proceedings conclude. If the funds are disbursed now, and the Supreme Court later grants rehearing or otherwise alters the posture of the case, as it should, the result would undermine public confidence in an orderly judicial process. *See Rossworm v. Pittsburgh Corning Corp.*, 468 F. Supp. 168, 170 (N.D.N.Y. 1979) (recognizing "the public interest and faith in our legal system"). The public interest is best served by keeping the funds secure in the Court's registry for the time necessary for the Supreme Court to resolve the pending rehearing petition. That is all the more true in this case, where concerns about politically motivated weaponization of the legal system have been voiced not only by President Trump's supporters, but also by frequent critics like Michael Cohen, who have characterized such efforts as part of a "larger war" against President Trump. *See* Michael Cohen, *The Price of Proximity* (June 14, 2026).[7] Against that backdrop, public confidence in the orderly administration of justice is best served by allowing the full process authorized by the Supreme Court's Rules to run its course before the funds are released.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion should be denied. In the alternative, the Court should hold the motion in abeyance, and maintain the funds in CRIS pending the Supreme Court's disposition of President Trump's timely petition for rehearing.

If the Court does grant Plaintiff's motion, President Trump respectfully requests that the Court enter a stay pending appeal.

---

[7] *Available at* https://therealmichaelcohen.substack.com/p/the-price-of-proximity.

14

**A17**

Dated: July 7, 2026
New York, New York

Respectfully submitted,

Josh Halpern*
JH LEGAL PLLC
1100 H Street NW
Suite 840
Washington, DC 20005
(610) 405-5531
jhalpern@jhlegalpllc.com
*Pro hac vice application forthcoming

/s/ Michael T. Madaio
Michael T. Madaio
MADAIO, EYET & ASSOCIATES LLP
1430 US Highway 206
Suite 240
Bedminster, New Jersey 07921
T:  (908) 869-1188
F:  (980) 450-1881
mmadaio@me-firm.com

*Counsel for President Donald J. Trump*

## CERTIFICATE OF SERVICE

I hereby certify that, on July 7, 2026, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

/s/ Michael T. Madaio

15

**A18**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __6-23-2023__

E. JEAN CARROLL,

                                   *Plaintiff,*

        v.                                            No. 22 Civ. 10016 (LAK)

DONALD J. TRUMP,

                                   *Defendant.*

**STIPULATION AND [PROPOSED] ORDER REGARDING THE USE OF A CASH**
**DEPOSIT IN COURT AS SECURITY IN LIEU OF A SUPERSEDEAS BOND**

**WHEREAS**, on May 11, 2023, the Court entered a Judgment against Defendant Donald J. Trump in the total amount of $5,000,000.00 in favor of Plaintiff E. Jean Carroll ("Judgment");

**WHEREAS**, on May 11, 2023, Defendant filed his Notice of Appeal appealing, *inter alia*, the Judgment, which is currently pending before the United States Court of Appeals for the Second Circuit ("Appeal");

**WHEREAS**, on June 8, 2023, Defendant filed a motion for a new trial, or in the alternative, a remittitur, which is currently pending before this Court, and a decision on which may be challenged as part of the Appeal;

**WHEREAS**, Tacopina, Seigel & DeOreo ("TSD"), counsel for Defendant, is holding $5,550,000.00 in its general IOLA trust account on behalf of Defendant for the purpose of performing under this Stipulation and Order;

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by and between the Plaintiff and Defendant, that:

**A19**

1.      TSD, on behalf of Defendant, shall make a cash deposit into the registry of the Court in the sum of $5,550,000.00, within five (5) business days of the entry of this Order, pursuant to Federal Rule of Civil Procedure 67(a);

2.      TSD shall also deliver to the Clerk of this Court a copy of this Order permitting the deposit, *see* Fed. R. Civ. P. 67(a);

3.      The deposited funds shall serve as "other security" under Federal Rule of Civil Procedure 62(b);

4.      The deposited funds, and any interest earned thereon, shall, upon receipt, become the property of this Court and shall not be an asset of the Defendant, *see* 28 U.S.C. §§ 2041, 2042;

5.      Proceedings to enforce the Judgment, or seeking discovery in aid of such enforcement, shall be stayed pending the final disposition of Defendant's Appeal, including any appeal to the United States Supreme Court, *see* Fed. R. Civ. P. 62(b);

6.      During the Appeal, the Clerk of this Court will redeposit the sum received from Defendant in an interest-bearing account, and the interest generated by the deposit will be added to the original deposit and serve as additional security for Plaintiff;

7.      The Clerk shall deduct from the income on the investment a fee consistent with that authorized by the Judicial Conference of the United States and set by the Director of the Administrative Office, *see* Local Civil Rule 67.1(b)(2);

8.      After the latest of (a) the mandate issued by the Second Circuit in connection with the Appeal; (b) a denial of a timely filed petition for writ of certiorari to the Supreme Court (if any) in connection with the Appeal; or (c) upon the Supreme Court's granting of certiorari, an order of the Supreme Court in connection with the Appeal, Plaintiff may collect any moneys owed by Defendant to Plaintiff under the terms of the Judgment, as may be modified on appeal or court

3

order, from the amount deposited with the Court by Defendant, inclusive of any interest earned on such funds less any fees;

9.      Collection by Plaintiff of the funds held by the Court may be accomplished by means of a motion or a stipulation and order, with notice served on the Clerk of this Court. Any funds remaining, inclusive of any interest earned on such funds less any fees, after paying out all moneys owed by Defendant to Plaintiff under the terms of the Judgment, as may be modified on appeal or court order, shall be paid to Defendant;

10.      If the Judgment is reversed and set aside completely, then the sums originally deposited with the Court by Defendant, together with any interest earned on such funds less any fees, shall be paid to Defendant. Collection by Defendant of the funds held by the Court may be accomplished by means of a motion or a stipulation and order, with notice served on the Clerk of this Court; and

11.      If, following the Appeal, the case is remanded to this Court for further proceedings and/or a supplemental opinion, the deposited funds held by the Court, and any interest earned thereon, will continue to be held by the Court to secure any award to Plaintiff until such award becomes final and un-appealable.

**A21**

Dated: June 23, 2023

_____

Joseph Tacopina
Chad Seigel
Matthew G. DeOreo
TACOPINA, SEIGEL & DEOREO
275 Madison Ave., Fl. 35
New York, New York 10016
Phone: (212) 227-8877
jtacopina@tacopinalaw.com
cseigel@tacopinalaw.com
mdeoreo@tacopinalaw.com

_____

Roberta A. Kaplan
Shawn Crowley
Michael Ferrara
Matthew J. Craig
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Phone: (212) 763-0883
rkaplan@kaplanhecker.com
scrowley@kaplanhecker.com
mferrara@kaplanhecker.com
mcraig@kaplanhecker.com

*Counsel for Defendant Donald J. Trump*

*Counsel for Plaintiff E. Jean Carroll*

SO ORDERED:

/s/ Lewis A. Kaplan
_____
Lewis A. Kaplan
United States District Judge

Dated: June 23, 2023

4