**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): 26-1840      Caption [use short title]

Motion for: Motion for a Stay Pending

Appeal and/or, if Necessary, an Injunction Pending

Appeal

Carroll v. Trump

Set forth below precise, complete statement of relief sought:

Stay of district court order directing disbursement of

funds held in court registry or, alternatively, injunction

pending appeal directing Plaintiff to return the funds

MOVING PARTY: President Donald J. Trump      OPPOSING PARTY: E. Jean Carroll

☐ Plaintiff      ☐ Defendant

☑ Appellant/Petitioner      ☐ Appellee/Respondent

MOVING ATTORNEY: Josh Halpern      OPPOSING ATTORNEY: Roberta Kaplan

[name of attorney, with firm, address, phone number and e-mail]

JH Legal PLLC, 1100 H Street NW, Suite 840,      Kaplan Martin; 1133 Avenue of the Americas, Suite 1500,

Washington, DC 20005; (610) 405-5531;      New York, NY 10036; (212) 316-9500;

jhalpern@jhlegalpllc.com      rkaplan@kaplanmartin.com

Court- Judge/ Agency appealed from: SDNY - Hon. Lewis Kaplan

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes ☐ No (explain): _____

Opposing counsel's position on motion:
☐ Unopposed ☑ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes ☐ No ☑ Don't Know

Is the oral argument on motion requested? ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set? ☐ Yes ☑ No If yes, enter date: _____

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has this request for relief been made below? ☑ Yes ☐ No
Has this relief been previously sought in this court? ☐ Yes ☑ No

Requested return date and explanation of emergency: _____

**Signature of Moving Attorney:**

/s/ Josh Halpern      Date: July 10, 2026      Service : ☑ Electronic ☐ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

E. JEAN CARROLL,

*Plaintiff-Appellee,*

v.

No. 26-1840

PRESIDENT DONALD J. TRUMP,

*Defendant-Appellant.*

## MOTION OF PRESIDENT DONALD J. TRUMP
## FOR A STAY PENDING APPEAL AND/OR, IF NECESSITATED BY EVENTS, AN INJUNCTION PENDING APPEAL

Defendant-Appellant President Donald J. Trump respectfully moves this Court, pursuant to Federal Rule of Appellate Procedure 8, for a stay pending appeal of the district court's order directing disbursement of funds held in the United States District Court's Court Registry Investment System ("CRIS") to Plaintiff-Appellee E. Jean Carroll. In the alternative, if necessitated by events, President Trump respectfully moves for an injunction pending appeal, directing Plaintiff to return those funds to CRIS.

The district court erroneously ordered the release of millions of dollars under its control while President Trump's timely petition for rehearing remains pending before the Supreme Court. The district court's order violates the parties' Stipulation

1

and Order, and causes immediate irreparable harm to President Trump. Plaintiff wrongly insists that this case is over, because the Supreme Court initially denied certiorari. However, the Supreme Court's Rules authorize rehearing from such denial, President Trump has timely invoked that process, and the parties' court-approved security arrangement does not permit the funds to be released before the Supreme Court has fully finished its consideration of the petition, which includes the petition for rehearing.

The parties' Stipulation and Order preserves the status quo until appellate review has run its course, which has not occurred. Paragraph 8 permits Plaintiff to collect only "*[a]fter the latest of*" three specified appellate events. D.Ct. ECF No. 210 ("Stipulation") ¶ 8 (emphasis added). Those events include both the denial of a timely certiorari petition, *id.* ¶ 8(b), but also, "upon the Supreme Court's granting of certiorari, an order of the Supreme Court in connection with the Appeal," *id.* ¶ 8(c). Separately, Paragraph 10 provides that, if the judgment is reversed and set aside completely, the deposited funds "shall be paid to Defendant." *Id.* ¶ 10. Read together, those provisions establish a straightforward framework: the funds remain under court control until it is clear whether Plaintiff may collect under Paragraph 8, or President Trump is entitled to a return of the funds under Paragraph 10.

Under that controlling framework, the pending rehearing petition clearly forecloses disbursement. If the Supreme Court grants rehearing, grants certiorari,

and issues an order in connection with the appeal allowing for Plaintiff to collect, Paragraph 8(c) would become operative. If the judgment is reversed and set aside completely, as it should be, Paragraph 10 would become operative. Until the Supreme Court resolves the pending rehearing petition, neither possibility can be ruled out as the controlling provision. The Stipulation and Order therefore does not permit the district court to release the funds from CRIS now.

The district court erroneously treated Paragraph 8(b) as dispositive, before it becomes possible to know whether Paragraph 8(c) would become the "latest of" the operative conditions. The court focused on the absence of the word "final" in Paragraph 8(b), and from that misguided premise wrongly concluded that the denial of certiorari triggered immediate disbursement. That is wrong. Paragraph 8 authorizes collection only "after the latest of" *all* the listed appellate events. So long as President Trump's timely rehearing petition remains pending, the Supreme Court may grant rehearing, grant certiorari, and issue an order "in connection with the Appeal." Stipulation ¶ 8(c). If that occurs, Paragraph 8(c)—not Paragraph 8(b)— would govern the timing of collection, if such is appropriate. The district court's reading therefore drains "after the latest of" of operative force, and improperly treats Paragraph 8(b) as controlling before the Supreme Court proceedings have concluded. That would be just as erroneous as distributing the funds under Paragraph

3

8(a) as soon as the Second Circuit denied en banc rehearing, even though a petition for certiorari was forthcoming.

The district court's treatment of Paragraph 10 compounds the error. The court acknowledged that Paragraphs 8 and 10 "operate in tandem," but adopted a reading that makes Paragraph 10 impossible to implement. If the funds are released now, and the Supreme Court later grants rehearing, grants certiorari, and reverses or vacates the judgment, the funds may no longer be available for return, thus rendering Paragraph 10 prematurely null and void. That result is incompatible with a court-approved security arrangement designed to preserve both parties' rights during appellate review.

Plaintiff seeks to somehow defeat irreparable harm by claiming that she now intends to place the money in an interest-bearing account until the Supreme Court rules on the rehearing petition. However, that late-breaking concession *supports* a stay. The modest relief that President Trump seeks—maintaining the funds in CRIS's interest-bearing account—provides Plaintiff with exactly what she claims to want— the funds remain collected, and are bearing interest which she, if appropriate under the Stipulation and Order, could collect. A stay maintains those funds under the district court's supervision, ensuring that the funds remain available to satisfy Paragraph 10 if the judgment is reversed and set aside. In light of Plaintiff's past public statements that she intends to distribute funds recovered from President

4

Trump, President Trump should not have to rely on Plaintiff's statements of her intention that appear in her briefing. That intention should be memorialized through a stay keeping the status quo, which already includes the funds being secured in an interest-bearing account. A stay is required.

This Court should stay the district court's disbursement order pending appeal. In the alternative, if the funds held by CRIS have already been disbursed, the Court should enter an injunction pending appeal, requiring Plaintiff to return all disbursed funds to CRIS.

## BACKGROUND

On May 9, 2023, a jury returned a verdict in favor of Plaintiff and awarded her $5 million. D.Ct. ECF No. 174. The district court entered judgment on May 11, 2023, and President Trump appealed. D.Ct. ECF Nos. 178, 179.

On June 23, 2023, while the appeal was pending, the parties submitted a joint stipulation governing the use of a cash deposit in court as security in lieu of a supersedeas bond. The district court so ordered that stipulation. D.Ct. ECF Nos. 209, 210. Under the Stipulation and Order, President Trump's deposit would serve as "other security" under Federal Rule of Civil Procedure 62(b).

Paragraph 8 of the Stipulation and Order provides that Plaintiff may collect only "[a]fter the latest of" three events:

(a) the mandate issued by the Second Circuit in connection with the Appeal; (b) a denial of a timely filed petition for writ of certiorari to the Supreme Court (if any) in connection with the Appeal; or (c) upon the Supreme Court's granting of certiorari, an order of the Supreme Court in connection with the Appeal.

Stipulation ¶ 8. Paragraph 9 further provides that collection may occur by motion or stipulation and order. *Id.* ¶ 9.

Paragraph 10 of the Stipulation and Order provides:

If the Judgment is reversed and set aside completely, then the sums originally deposited with the Court by Defendant, together with any interest earned on such funds less any fees, shall be paid to Defendant. Collection by Defendant of the funds held by the Court may be accomplished by means of a motion or a stipulation and order, with notice served on the Clerk of this Court.

Stipulation ¶ 10.

This Court affirmed the judgment on December 30, 2024, and denied rehearing en banc on June 13, 2025, with Judge Menashi and Judge Park dissenting. President Trump filed a timely petition for a writ of certiorari. On June 29, 2026, the Supreme Court denied that petition.

The next day, Plaintiff filed her motion seeking disbursement of the funds. Her proposed order would direct the Clerk to disburse the $5 million principal judgment and $779,783 in asserted post-judgment interest. Plaintiff further asked that the district court shorten the standard briefing schedule under the Local Rules, giving President Trump seven days rather than the standard 14 days to respond to

6

her motion. The district court granted the motion to shorten the briefing schedule the next day, without allowing for a response from President Trump. On July 3, President Trump filed a motion to amend the briefing schedule to be allowed the 14 days to respond as mandated by the Local Rules. The district court denied that motion on the July 4th holiday, without analysis or explanation.

President Trump filed a petition for rehearing of the denial of his petition for a writ of certiorari in the Supreme Court on July 6, 2026. That petition remains pending.

On July 7, President Trump filed a robust opposition to Plaintiff's motion for disbursement, detailing the arguments herein. In addition, President Trump requested that, if the district court were going to grant Plaintiff's motion for disbursement, the district court grant a stay pending appeal.

On July 8—just hours after President Trump filed his opposition brief—the district court granted Plaintiff's motion and ordered that the funds held by CRIS be disbursed to Plaintiff, without acknowledging the President's request for a stay pending appeal. D.Ct. ECF No. 241. In its haste to rule against the President, the district court issued its order without accompanying analysis. Later in the day, after President Trump had already sought emergency relief from this Court, the district court issued a memorandum seeking to explain its ruling. D.Ct. ECF No. 243. The memorandum confirmed the district court's error. It wrongly treated Paragraph 8(b)

7

as dispositive because Paragraph 8(b) does not contain the word "final," but it barely engaged with Paragraph 8(c)—the provision that may become the "latest of" the operative appellate-review conditions if the Supreme Court grants rehearing and then grants certiorari. D.Ct. ECF No. 243, at 2-5. The district court did not provide any meaningful analysis as to Paragraph 10, and asserted, again, in error, that irreparable harm is not present because President Trump could sue for the money back, which is exactly the kind of harm a stay is meant to protect from.

President Trump immediately sought an administrative stay from this Court on Wednesday, July 8, 2026, to preserve the status quo while the Court considers his forthcoming motion for a stay pending appeal. 2d Cir. ECF No. 8.1. That request was denied the same day, with the denial order citing *Nken v. Holder*, 556 U.S. 418, 433–36 (2009), even though *Nken* supplies the merits standard for a stay pending appeal, not the threshold inquiry for an administrative stay. 2d Cir. ECF No. 14.1.

## ARGUMENT

### I.     The Court Should Stay the District Court's Order Pending Appeal.

Courts consider four factors in determining whether to grant a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418,

8

426 (2009) (quotation omitted). The Court applies those factors on "a sliding scale," under which "more of one excuses less of the other." *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006) (quotation omitted). "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury [the movant] will suffer absent the stay." *Id.* (cleaned up). Each factor strongly favors a stay here.

**A.     President Trump Is Likely to Succeed on the Merits of His Appeal.**

President Trump is likely to succeed on the merits of his appeal, because the district court wrongly and improperly treated the Supreme Court's denial of certiorari as the last word, even though President Trump has timely invoked the Supreme Court's prescribed rehearing procedure. Paragraph 8 does not authorize disbursement while President Trump's timely Supreme Court rehearing petition remains pending, and Paragraph 10 prohibits it. Because the district court's order conflicts with the plain language, context, and purpose of Paragraphs 8 and 10, the Court should grant President Trump's motion.

**1.     Disbursement Cannot Occur Under Subparagraph 8(c) of the Stipulation and Order Before the Supreme Court Acts Upon President Trump's Petition for Rehearing.**

Courts interpret stipulations pursuant to "principles governing construction of contracts in general." *Sanchez v. Maher*, 560 F.2d 1105, 1108 (2d Cir. 1977); *see also Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 737 (2d Cir. 2000). When

interpreting a contract, "courts must effectuate its plain language." *Seabury Constr. Corp. v. Jeffrey Chain Corp.*, 289 F.3d 63, 68 (2d Cir. 2002). Here, the plain language of the Stipulation and Order conditions collection on the occurrence of certain events. *See* Stipulation ¶ 8. Thus, as a matter of contract law, collection cannot occur until those conditions have been satisfied. *Cauff, Lippman & Co. v. Apogee Fin. Grp., Inc.*, 807 F. Supp. 1007, 1022 (S.D.N.Y. 1992) ("Where the performance of either party or the validity of the contract itself is conditioned upon the occurrence of some event, the contractual obligation does not arise if that event does not occur."). Here, the plain language, structure, and purpose of Paragraph 8 all point to the same conclusion: Subparagraph 8(c) remains potentially operative while President Trump's timely rehearing petition is pending, and Plaintiff may not collect before the Supreme Court fully resolves that petition.

*Text*. Under the plain language of Paragraph 8, the conditions precedent to collection have not yet been satisfied. The Stipulation and Order permits collection only "[a]fter the latest of" three distinct events. Stipulation ¶ 8. Under the plain language of this provision, collection is not triggered merely by the occurrence of one (or even two) of these events. *Cf. Ciaramella v. Reader's Digest Ass'n*, 131 F.3d 320, 324 (2d Cir. 1997). Paragraph 8 permits collection—*i.e.*, provides that "Plaintiff may collect"—only "after the latest of" *all* of the enumerated events. Stipulation ¶ 8.

10

The district court embraced Plaintiff's wrongful contention that the second enumerated event—"denial of a timely filed petition for writ of certiorari"—has occurred. *See* D.Ct. ECF No. 243, at 2. It has not. Paragraph 8 includes a third potentially triggering event: "upon the Supreme Court's granting of certiorari, an order of the Supreme Court in connection with the Appeal." *Id.* ¶ 8(c). A timely petition for rehearing from the denial of certiorari is part of the Supreme Court proceedings in connection with that same appeal. *See* Sup. Ct. R. 44.2. If the Supreme Court grants the petition for rehearing and then grants certiorari, as it should, Subparagraph 8(c) would be the governing condition that dictates the timing of collection by Plaintiff, if the judgment is not overturned. Until the Supreme Court decides the pending petition for rehearing, the Court cannot conclude that "the latest of" the conditions enumerated in Paragraph 8 has occurred. Stipulation ¶ 8. As a result, under the plain language of Paragraph 8, collection is premature and impermissible.

*Context*. The structure of Paragraph 8 confirms that reading. Paragraph 8 must be construed as a whole and in context. *See Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 313–14 (2d Cir. 2013). Read together, Subparagraphs 8(a), 8(b), and 8(c) establish a sequential framework keyed to how appellate review unfolds: if review ends with the Second Circuit's mandate, Subparagraph 8(a) governs; if a timely certiorari petition is filed, and the petition

and rehearing are fully denied, Subparagraph 8(b) governs; and if certiorari is granted, Subparagraph 8(c) governs. Stipulation ¶ 8. It is currently impossible to know whether 8(b), 8(c), or 10 will become the operative provision, and thus the district court should have denied Plaintiff's motion.

*Purpose*. This proper reading also gives effect to the Stipulation and Order's purpose. President Trump deposited cash security to preserve the status quo while appellate review proceeded. Plaintiff remains fully protected by that security, which is bearing interest, today. Releasing the funds now would improperly dissolve the security before the Supreme Court completes the rehearing process expressly authorized by its rules. *See Litton Sys., Inc. v. AT&T*, 568 F. Supp. 507, 510 (S.D.N.Y. 1983); *see also* Sup. Ct. R. 44.2.

By contrast, Plaintiff's interpretation of Paragraph 8 would lead to unreasonable and absurd results, including wrongly mooting Paragraph 10. Under settled principles of contractual interpretation, "[a] contract should not be interpreted to produce a result that is absurd." *Hughes Commc'ns India Private Ltd. v. The DirecTV Grp., Inc.*, 71 F.4th 141, 155 (2d Cir. 2023) (citation omitted). Under Plaintiff's interpretation, erroneously embraced by the district court, Paragraph 8 would mandate transferring funds to Plaintiff now, *even if* the Supreme Court were to grant President Trump's petition for rehearing, grant the petition for writ of certiorari, and reverse on the merits, which would make Paragraph 10 operative, thus

causing the funds to be returned to President Trump. The result of Plaintiff's incorrect interpretation would be absurd: Plaintiff would not be entitled to the judgment, it would be due to be returned to President Trump, and yet those amounts would have been distributed to Plaintiff without any realistic chance of recoupment, at least not without protracted litigation. This untenable result directly conflicts with principles of contractual interpretation. *See id.* Those principles instead mandate the correct conclusion that Paragraph 8 does not permit collection before the Supreme Court acts upon President Trump's pending petition for rehearing.

### 2. Under Subparagraph 8(b), a Certiorari Denial Does Not Trigger Disbursement While Rehearing Remains Pending.

Further, Subparagraph 8(b) has not yet been triggered, due to the fact that President Trump's pending petition for rehearing is a component of the certiorari process contemplated by the Supreme Court's Rules. Subparagraph 8(b) refers to the "denial of a timely filed petition for writ of certiorari," and it cannot be read to require disbursement before that denial is final in any practical sense—*i.e.*, while a timely petition for rehearing remains pending under the Supreme Court's own rules. *See* Sup. Ct. R. 44.2. Until the Supreme Court resolves that petition, its denial of certiorari remains subject to reconsideration by the Court itself. *Id.* The Stipulation and Order mandates that the status quo be maintained until the Supreme Court has an opportunity to act. Like any contract, the Stipulation and Order should be

13

construed to effectuate its purpose. *Flynn v. McGraw Hill, LLC*, 120 F.4th 1157, 1165-66 (2d Cir. 2024). Therefore, the district court erred in granting Plaintiff's motion.

### 3. Plaintiff's Position Cannot Be Reconciled with Paragraph 10 of the Stipulation and Order.

The district court's incorrect interpretation of Paragraph 8 cannot be squared with Paragraph 10 of the Stipulation and Order, because it creates an irreconcilable contradiction within the document. Contracts must be read as a whole, and courts reject interpretations that cause provisions to conflict or nullify one another. *Kinek v. Paramount Communications, Inc.*, 22 F.3d 503, 509 (2d Cir. 1994). Plaintiff's incorrect reading would conflict with these bedrock interpretive principles by rendering Paragraph 10 internally inconsistent with Paragraph 8.

Paragraph 10 provides that if the Judgment is "reversed and set aside completely," the deposited sums, with interest less fees, "shall be paid to Defendant." Yet under Plaintiff's interpretation, those same funds would already have been disbursed to Plaintiff before appellate review is complete. That creates a direct contradiction: Paragraph 10 presumes the funds remain available with the Court for return to Defendant after the appellate process is final, while Plaintiff and the district court's reading would allow those funds to be removed from the Court's control

14

altogether. These propositions cannot both be true, and it is President Trump's interpretation that is proper and correct.

The Stipulation and Order has to be read to avoid this contradiction, and to give proper effect to both provisions. Paragraphs 8 and 10 operate in tandem: Paragraph 8 does not authorize disbursement while Supreme Court review remains pending, as it remains here, and Paragraph 10 ensures that the funds remain available for return to Defendant if the judgment is ultimately reversed and set aside. A stay must issue.

Vitally, President Trump has presented a serious petition for rehearing. Supreme Court Rule 44.2 expressly authorizes rehearing from a denial of certiorari based on "intervening circumstances of a substantial or controlling effect," or "other substantial grounds not previously presented." Sup. Ct. R. 44.2. Plaintiff quoted this rule to the district court. President Trump's rehearing petition invokes that rule and relies on the grounds specified by the rule. This Court need not decide whether the Supreme Court will grant rehearing. It need only recognize that the petition is timely, authorized by the Supreme Court's rules, and pending.

### 4.      The District Court's Contrary View Rests on a Clear Misreading of the Stipulation and Order.

The district court clearly erred as it rushed to judgment. Plaintiff sought immediate disbursement the day after certiorari was denied; the district court

shortened President Trump's response time; denied his request for the ordinary briefing period on the July 4th holiday; and ordered the funds released just hours after President Trump filed his opposition. Later that day, the district court issued a memorandum "briefly summariz[ing]" its reasoning. D.Ct. ECF No. 243, at 2. That memorandum confirms the need for review: it wrongly treats Paragraph 8(b) as dispositive, gives Paragraph 8(c) no independent force, and creates a direct conflict between Paragraph 8 and Paragraph 10.

Paragraph 8 authorizes collection only "[a]fter the latest of" the listed appellate events. Stipulation ¶ 8. The district court instead focused on the absence of the word "final" in Paragraph 8(b) and concluded that the Supreme Court's denial of certiorari triggered immediate disbursement. But President Trump's argument does not depend on inserting "final" into Paragraph 8(b). It depends on enforcing the phrase "after the latest of." While the rehearing petition remains pending, the Supreme Court may grant rehearing, grant certiorari, and/or issue an order "in connection with the Appeal." *Id.* ¶ 8(c). In that event, Paragraph 8(c)—not Paragraph 8(b)—would control the timing of collection. The district court could not determine the "latest of" the operative events while that possibility remains live.

The district court's answer to Paragraph 8(c) was to claim that President Trump's argument "collapses into" his position that the certiorari process remains pending until rehearing is resolved. D.Ct. ECF No. 243, at 5. That misses the point.

16

Paragraph 8(c) is an independent condition. It exists precisely because the parties accounted for the possibility of Supreme Court review, and agreed that, if certiorari were granted, collection would await an order of the Supreme Court "in connection with the Appeal." The relevant question was whether Paragraph 8(c) could still become the "latest of" the Paragraph 8 events while rehearing remained pending. The answer is yes, and the district court gave no meaningful reason otherwise.

The district court's Paragraph 10 analysis repeats the same mistake. The court acknowledged that Paragraphs 8 and 10 "operate in tandem," but then wrongly declared that the appellate process had already "played out as provided for in Subparagraph 8(b)." That conclusion improperly assumes what had to be decided. Paragraph 10 provides that, if the judgment is reversed and set aside completely, as it should be, the deposited funds, with interest less fees, "shall be paid to Defendant." If the Supreme Court grants rehearing, grants certiorari, and later reverses or vacates the judgment, immediate disbursement as called for by the district court would leave no court-controlled fund to return. That reading does not harmonize Paragraphs 8 and 10. It wrongly lets Paragraph 8(b) swallow the protection Paragraph 10 was designed to preserve, and abolishes Paragraph 10 as a whole.

The district court's reading releases the funds before the Stipulation and Order allows release. Paragraph 8(c) remains capable of becoming the controlling appellate event, and Paragraph 10 remains capable of requiring return of the funds to President

17

Trump. Until the Supreme Court resolves the pending rehearing petition, the Stipulation and Order requires the funds to remain in CRIS. The district court's contrary order should be stayed.

### B. President Trump Will Be Irreparably Harmed Absent a Stay.

The district court's order authorizes disbursement of a multimillion-dollar judgment while President Trump's Supreme Court rehearing petition remains pending. If the funds leave CRIS now, and the Supreme Court later grants rehearing and alters the posture of the case, the funds will be owed back to President Trump under Paragraph 10, but he will likely never actually recover the funds.

That risk is not speculative. Plaintiff has repeatedly stated publicly that she intends to give away money collected from President Trump, and has even created a foundation to distribute the funds. *See, e.g.*, A14 (collecting numerous public statements by Plaintiff). Once funds are distributed to third-party organizations, they likely will not be recoverable.

That is the definition of irreparable harm. The Supreme Court has recognized that although "the loss of money is not typically considered irreparable harm," a stay applicant *does* face irreparable harm where the funds "cannot be recouped" and are therefore "irrevocably expended." *Nat'l Institutes of Health v. American Public Health Ass'n*, 145 S. Ct. 2658 (2025) (quotation omitted); *see also NFIB v. OSHA*, 595 U.S. 109, 120 (2022) (per curiam) (granting stay where applicant faced threat

of billions of dollars in unrecoverable costs); *Railway Labor Executives' Ass'n v. Gibbons*, 448 U.S. 1301, 1305 (1980) (Stevens, J., in chambers) (noting that a preliminary injunction avoids "irreparable damage" by preventing "a chain of events that would lead to substantial payments that would be . . . unrecoverable"). Such irreparable harm is precisely the risk here.

Plaintiff attempts, but fails, to avoid the harm by claiming, for the first time in this Court, that she intends to use the money from this judgment to fund her retirement and place it in an interest-bearing account, and she argues that President Trump's cited articles concern the separate $83 million judgment. 2d Cir. ECF No. 12.1, at 10-11. But that only confirms why a stay is necessary. Plaintiff asks this Court to substitute her current, unilateral assurance for the court-controlled protection the parties actually adopted. The Stipulation and Order placed the funds in CRIS, not in Plaintiff's personal account, because the funds were to remain available for the disposition required by Paragraphs 8 and 10. Once the money leaves CRIS, President Trump loses the specific protection he bargained for: a segregated, court-controlled fund available for return if the judgment is reversed and set aside. Plaintiff's asserted present intention to preserve the money is not a proper substitute for that protection.

Nor do Plaintiff's escrow cases control. Plaintiff relies on cases stating the general rule that monetary injury is ordinarily not irreparable, including *CRP/Extell*

19

*Parcel I, L.P. v. Cuomo*, 394 F. App'x 779 (2d Cir. 2010), and *Preble-Rish Haiti, S.A. v. Republic of Haiti*, 2023 WL 5803567 (S.D.N.Y. Sept. 7, 2023). But President Trump is not asserting a routine objection to paying money. He is seeking to preserve court-held security that exists for the very purpose of protecting both sides during appellate review. The injury is the loss of that court-controlled security before Paragraph 10 can be ruled out. That injury cannot be fully remedied by a later damages action, which would be inevitably time-consuming, and costly, thus wasting those same funds that are mandated to be secured in the court's account.

The district court's contrary reasoning makes the same mistake. It suggested that, if the Supreme Court later grants rehearing and the judgment is reversed, President Trump could sue to recover any funds erroneously disbursed. D.Ct. ECF No. 243, at 6. That is no answer. Paragraph 10 provides that the funds held by the Court "shall be paid to Defendant" if the judgment is reversed and set aside. Stipulation ¶ 10. A later lawsuit is not equivalent to money remaining in CRIS. It is slower, uncertain, and potentially incomplete—especially where Plaintiff has publicly discussed distributing funds recovered from President Trump. The irreparable-harm factor therefore strongly favors a stay.

### C.     A Stay Will Not Injure Plaintiff at All.

In light of Plaintiff's July 8 filing, a stay will not injure Plaintiff. Plaintiff insists that she "will place the award in an interest-bearing account until [President

20

Trump's] petition for rehearing is denied." 2d Cir. ECF No. 12.1, at 10-11. In terms of Plaintiff's legitimate interests, that outcome is indistinguishable from the relief that President Trump seeks, namely, maintaining the funds in CRIS's interest-bearing account. The current balance in CRIS far exceeds the amount to which Plaintiff is entitled, including post-judgment interest. The only difference is that maintaining the funds in CRIS's custody ensures that it will be possible to comply with Paragraph 10 of the Stipulation and Order, if President Trump ultimately prevails on his petition for rehearing. Maintaining the funds in CRIS fully protects Plaintiff while avoiding irreparable harm to President Trump.

### D. The Public Interest Favors a Stay.

If the funds are disbursed now, and the Supreme Court later grants rehearing or otherwise alters the posture of the case, the result would undermine public confidence in an orderly judicial process. *See Edelman v. Jordan*, 414 U.S. 1301, 1302–03 (1973) (Rehnquist, J.) (public interest favors a stay if "unlikely that petitioner . . . would be able to recover funds paid out" upon execution of the judgment). That is especially true in this case, where concerns about politically motivated weaponization of the legal system have been voiced not only by President Trump's supporters, but also by individuals like Michael Cohen, who have characterized such efforts as part of a "larger war" against President Trump. *See*

Michael Cohen, *The Price of Proximity* (June 14, 2026).[1] Likewise, Judge Menashi emphasized that "[t]he trial in this case consisted of a series of indefensible evidentiary rulings. . . . No one can have any confidence that the jury would have returned the same verdict if the normal rules of evidence had been applied." *Carroll v. Trump*, 141 F.4th 366, 386 (2d Cir. 2025) (Menashi, J., dissenting from denial of rehearing). Against that backdrop, allowing the full process authorized by the Supreme Court's Rules to run its course before the funds are released advances public confidence in the orderly administration of justice.

Because the *Nken* factors—applied on the sliding scale dictated by this Court's precedent—each favor President Trump, and because the funds may be irrevocably disbursed in the interim, the Court should stay the district court's disbursement order pending appeal.

## II. In the Alternative, the Court Should Grant an Injunction Pending Appeal Requiring Plaintiff to Return Any Distributed Funds to CRIS.

Alternatively, if the funds held by CRIS have already been disbursed to Plaintiff, this Court should issue an injunction pending appeal requiring Plaintiff to return the disbursed funds to CRIS. This Court's authority to preserve the status quo includes restoring funds that a judgment creditor has already collected due to an erroneous district court order. *See* Fed. R. App. P. 8(a)(1)(C); 28 U.S.C. § 1651;

---

[1] *Available at* https://therealmichaelcohen.substack.com/p/the-price-of-proximity.

*Kirtley v. Abrams*, 299 F.2d 341, 348 (2d Cir. 1962). The equities compel that result for the same reasons that a stay is warranted. *See supra* Part I. Requiring Plaintiff to return the funds to CRIS would restore, not disturb, the status quo the parties bargained for, and would keep Plaintiff fully secured with interest pending appeal, which is the status she has already agreed to in prior briefing before this Court.

## CONCLUSION

President Trump respectfully requests that this Court stay the district court's order pending appeal or, in the alternative, if necessitated by events, enter an injunction pending appeal that requires Plaintiff to pay all distributed funds back to CRIS.

Dated: July 10, 2026

Respectfully Submitted,

/s/ *Josh Halpern*
Josh Halpern
JH LEGAL PLLC
1100 H Street NW
Suite 840
Washington, DC 20005
(610) 405-5531
jhalpern@jhlegalpllc.com

*Counsel for President Donald J. Trump*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d) because it contains 5,195 words. This motion also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d) because it was prepared using Microsoft Word in 14-point Times New Roman, a proportionally spaced typeface.

/s/ *Josh Halpern*
Josh Halpern

## **SUPPLEMENTAL APPENDIX OF EXHIBITS**

1. District Court Memorandum and Order Granting Plaintiff's Motion for Disbursement of Deposited Funds From the Registry of the Court, D. Ct. Doc. 243 (July 8, 2026).........................................................................SA1

**SA1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

E. JEAN CARROLL,

Plaintiff,

-against-                                                          22-cv-10016 (LAK)

DONALD J. TRUMP,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __7/8/2026__

### MEMORANDUM AND ORDER REGARDING
### MOTION FOR DISBURSEMENT OF FUNDS

LEWIS A. KAPLAN, *District Judge.*

More than three years ago, a jury returned a verdict against defendant for $5 million for sexual abuse and defamation. The judgment was appealed. Defendant posted $5,550,000 with the Court to secure payment of the judgment plus interest pursuant to a stipulation and court order that stayed enforcement of the judgment pending appeal (the "Stipulation and Order"). In due course, the judgment was affirmed on appeal. The Court of Appeals denied rehearing *en banc.* And the Supreme Court, on June 29, 2026, denied without dissent defendant's petition for a writ of certiorari. Plaintiff now has moved for disbursement of funds in the amount of the judgment plus post-judgment interest. Defendant resisted, contending that payment must, or in any event should, be stayed against the possibility that the Supreme Court might change its mind, grant his petition for rehearing of his cert. petition, and grant certiorari.

**SA2**

2

Having considered carefully defendant's arguments, the Court by separate order has now directed that the money defendant owes plaintiff be disbursed to plaintiff. This memorandum briefly summarizes certain aspects of the Court's reasoning.

> **1.** Paragraph 8 of the Stipulation and Order provides:

> > "***After the latest of*** (a) the mandate issued by the Second Circuit in connection with the Appeal; (b) ***a denial of a timely filed petition for writ of certiorari to the Supreme Court (if any) in connection with the Appeal***; or (c) upon the Supreme Court's granting of certiorari, an order of the Supreme Court in connection with the Appeal, ***Plaintiff may collect any moneys owed by Defendant to Plaintiff under the terms of the Judgment, as may be modified on appeal or court order, from the amount deposited with the Court by Defendant, inclusive of any interest earned on such funds less any fees.***"[1]

Its plain language thus states that certiorari having been denied on June 29, 2026, plaintiff now is entitled to be paid from the amount deposited with the Court including the interest earned thereon over the past three years.

> **2.** Defendant heavily relies on the claim that he has filed a petition for rehearing with respect to his petition for a writ of certiorari. It is wrong, in his view, to "treat[] the Supreme Court's denial of certiorari as the last word" while the rehearing petition is pending.[2] That is so, he says, because Subparagraph 8(b) is triggered only upon "the *final* denial of a petition for certiorari."[3] The short answer to that contention is that the word "final" does not appear in Subparagraph 8(b). Had the parties wished to agree that the judgment would be payable only upon the denial of any

---

[1] Emphasis added.

[2] Def.'s Opp'n (Dkt 240) at 4.

[3] *Id.* at 1 (emphasis added).

3

petition for rehearing of the denial of a petition for certiorari, they easily could have expressed that intention – either by inserting the word "final" or otherwise by addressing explicitly the consequences of the possibility of a rehearing petition being filed in the Supreme Court. Defendant in effect is asking the Court to redraft in his favor the contract to which he agreed.

Nor is it any surprise that Subparagraph 8(b) reads as it does and means just what plaintiff claims. That language and construction are fully consistent with the Supreme Court's rules and the common understanding at the bench and bar of rehearing petitions in the cert.-denied context.

Rule 16.3 of the Rules of the Supreme Court provides that "[t]he order of denial [of a petition for a writ of certiorari] will not be suspended pending disposition of a petition for rehearing except by order of the Court or a Justice." In other words, "the denial of certiorari is effective when issued, and it disposes of the case before the Supreme Court."[4] That is so notwithstanding the fact that a petition for rehearing of a denial of certiorari theoretically has been or might be filed and, if filed, granted.

It is worth noting also that the word "theoretically" in the last sentence warrants heavy emphasis. It is abundantly clear that applications for rehearing of denials of certiorari are permitted only in very narrow circumstances. Few are filed, and successful filings are extremely rare birds.[5]

---

[4] *Horton v. United States*, 244 F.3d 546, 551 (7th Cir. 2001); *accord Rosa v. United States*, 785 F.3d 856, 859 (2d Cir. 2015) (collecting cases and noting that "[a]ll eight circuit courts of appeals to have considered this issue have reached this same conclusion").

[5] *E.g.*, STEPHEN M. SHAPIRO, ET AL., SUPREME COURT PRACTICE §§ 15.5, 15.6.(B) (11th ed. 2019).

4

Finally, it bears mention that the Court's reading of the Stipulation and Order is consistent with the view of defendant's counsel until very recently. According to plaintiff's counsel:

> "Defendant's counsel contacted Carroll's undersigned counsel [shortly after the denial of certiorari on June 29, 2026,] to inquire whether Carroll would consent to a further stay of enforcement of the judgment in this action so that Defendant can ask the Supreme Court to reconsider its denial of certiorari in her case. Counsel for Carroll explained that Paragraph 8 of the Stipulation and Order provided for disbursement of the award owed to Carroll immediately upon denial of a petition for certiorari, and counsel for Defendant clarified that he was requesting that Carroll consent to a 'new stay or continuance' of execution."[6]

Defendant has not disputed this account. And that is significant.

Of course, if Subparagraph 8(b), and the Stipulation and Order more generally, meant what defendant now claims, there would have been no need for plaintiff to consent to a "further stay of enforcement" pending a possible request to the Supreme Court to reconsider its denial of certiorari. Defendant *on June 29, 2026*, thus seemed to have known that he was asking for plaintiff to consent to something to which she previously had not consented and to which defendant knew he did not have. Over a week later, defendant filed his opposition to plaintiff's motion to disburse funds taking this opposite position.

3.      Invoking Subparagraph 8(c), defendant argues also that while his "rehearing petition is pending," it remains possible for the Supreme Court to grant certiorari and issue an order in connection with his appeal.[7] In defendant's view, this means that this "Court [could not] conclude

---

[6]      Pl.'s Mot. (Dkt 233) at 4.

[7]      Def.'s Opp'n (Dkt 240) at 5.

5

that 'the latest of' the conditions enumerated in Paragraph 8 ha[d] occurred."[8]  This argument, however, collapses into defendant's wrongheaded claim that his cert. petition before the Supreme Court remains pending until the Supreme Court decides his petition for rehearing.  Yet defendant's rehearing petition has "no effect on the finality of the denial of certiorari,"[9] and Subparagraph 8(b) as a matter of plain text (and thus the parties' intent) still governs.

4.        Paragraph 10 of the Stipulation and Order in relevant part provides that "[i]f the Judgment is reversed and set aside completely, then the sums originally deposited with the Court by Defendant, together with any interest earned on such funds less any fees, shall be paid to Defendant."  Defendant argues that disbursing funds now would "wrongly moot[] out Paragraph 10" and render the Stipulation and Order "internally inconsistent" because, in his view, "Paragraph 10 presumes the funds remain available with the Court for return to Defendant after the appellate process is final."[10]  Defendant is correct to the extent that "Paragraphs 8 and 10 operate in tandem."[11]  But Paragraph 10 provides no independent basis for adopting defendant's misinterpretation of Paragraph 8.  Paragraph 10 instead is premised on the "appellate process" playing out according to one of the three paths provided for in Paragraph 8.  It has done so.  It has played out as provided for in Subparagraph 8(b).

---

[8]       *Id.* at 6.

[9]       *Jennings v. Hagel*, 558 F. App'x 661, 662 (7th Cir. 2014); *accord Rosa*, 785 F.3d at 860.

[10]      Def.'s Opp'n (Dkt 240) at 7, 9.

[11]      *Id.* at 9.

**SA6**

6

**5.** Finally, disbursement of funds would not cause defendant irreparable harm. In the highly unlikely event that the Supreme Court were to (i) grant defendant's petition for rehearing, (ii) reverse itself and grant his previously denied cert. petition, and (iii) reverse the judgment in this case, defendant could bring suit to recover any funds erroneously disbursed.[12]

\*     \*     \*

In the last analysis, defendant has been stalling this case for years. A jury unanimously concluded that he sexually abused and defamed plaintiff and awarded her damages accordingly. The judgment on that verdict has been upheld on appeal. *En banc* rehearing has been denied. The Supreme Court has denied certiorari without dissent. It is time for him to "do equity" and pay the judgment.

SO ORDERED.

Dated:      July 8, 2026

Lewis A. Kaplan
United States District Judge

---

[12] *See, e.g., Nw. Fuel Co. v. Brock*, 139 U.S. 216, 219-20 (1891).