## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

E. JEAN CARROLL,

   *Plaintiff-Appellee*,

  v.

DONALD J. TRUMP,

   *Defendant-Appellant*.

No. 26-1840

## BRIEF OF PLAINTIFF-APPELLEE E. JEAN CARROLL IN OPPOSITION TO MOTION FOR A STAY OR INJUNCTION PENDING APPEAL

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 4

ARGUMENT ....................................................................................................... 8

    I.  Defendant's Failure to Comply with Rule 8, Standing Alone, Justifies Denying Defendant's Request for an Injunction Mandating Return of the Disbursed Funds .................................................................................. 8

    II. Defendant Has Failed to Carry His Heavy Burden to Justify the Injunction He Seeks ................................................................................................... 9

        A. Defendant Is Unlikely to Succeed on the Merits .................................... 11

        B. Defendant Has Failed Utterly to Show Irreparable Harm ....................... 17

        C. The Balance of the Equities Tips Decisively Against Granting Defendant's Motion ............................................................................... 20

        D. The Public Interest Is in Carroll's Favor ................................................ 21

CONCLUSION .................................................................................................... 22

CERTIFICATE OF COMPLIANCE .................................................................... 24

CERTIFICATE OF SERVICE ............................................................................ 25

# TABLE OF AUTHORITIES

**CASES** *Page(s)*

*Agudath Israel of Am. v. Cuomo*,
980 F.3d 222 (2d Cir. 2020) ........................................................................8, 10

*Barretta v. Wells Fargo Bank, N.A.*,
693 F. App'x 26 (2d Cir. 2017) .........................................................................22

*Bell v. Thompson*,
545 U.S. 794 (2005) ..........................................................................................16

*Boumediene v. Bush*,
551 U.S. 1160 (2007) ........................................................................................17

*Carroll v. Trump*,
151 F.4th 50 (2d Cir.) ........................................................................................21

*Carroll v. Trump*,
124 F.4th 140 (2d Cir.) ........................................................................................5

*Carroll v. Trump*,
No. 24-644 (2d Cir.) .................................................................................... 20, 21

*Carroll v. Trump*,
No. 23-1045 (2d Cir.) ........................................................................................20

*Carroll v. Trump*,
No. 23-1146 (2d Cir.) ........................................................................................20

*Carroll v. Trump*,
635 F. Supp. 3d 229 (S.D.N.Y. 2022) ..............................................................20

*Carroll v. Trump*,
590 F. Supp. 3d 575 (S.D.N.Y. 2022) ...........................................................2, 11

*Carroll v. Trump*,
No. 22 Civ. 10016 (S.D.N.Y.) ................................................................ 4, 7, 8, 20

*Carroll v. Trump*,
  No. 20 Civ. 7311 (S.D.N.Y.) ...................................................................20

*Clay v. United States*,
  537 U.S. 522 (2003) .............................................................................15

*CRP/Extell Parcel I, L.P. v. Cuomo*,
  394 F. App'x 779 (2d Cir. 2010) .......................................................3, 18

*Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*,
  96 F.4th 351 (2d Cir. 2024) ............................................... 10, 17, 18, 20

*Edelman v. Jordan*,
  414 U.S. 1301 (1973) ...........................................................................22

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
  481 F.3d 60 (2d Cir. 2007) ..................................................................17

*Hickman v. Taylor*,
  329 U.S. 495 (1947) .............................................................................17

*Horton v. United States*,
  244 F.3d 546 (7th Cir. 2001) ...............................................................16

*Hurst v. Florida*,
  577 U.S. 92 (2016) ...............................................................................16

*Johnson v. Alabama*,
  136 S. Ct. 1837 (2016)..........................................................................16

*JSG Trading Corp. v. Tray-Wrap, Inc.*,
  917 F.2d 75 (2d Cir. 1990) ...................................................................18

*Kent Recycling Servs., LLC v. U.S. Army Corps of Eng'rs*,
  136 S. Ct. 2427 (2016)..........................................................................16

*Liberty Univ. v. Geithner*,
  568 U.S. 1022 (2012) ...........................................................................16

iii

*Manley v. AmBase Corp.*,
337 F.3d 237 (2d Cir. 2003) ....................................................................13

*Nat'l Fed'n of Indep. Bus. v. O.S.H.A.*,
595 U.S. 109 (2022) ................................................................................19

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
567 U.S. 519 (2012) ................................................................................16

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n*,
145 S. Ct. 2658 (2025)............................................................................19

*New York v. U.S. Dep't of Homeland Sec.*,
974 F.3d 210 (2d Cir. 2020) ....................................................................10

*Preble-Rish Haiti, S.A. v. Republic of Haiti*,
2023 WL 5803567 (S.D.N.Y. Sept. 7, 2023) ........................................18

*Rosa v. United States*,
785 F.3d 856 (2d Cir. 2015) ....................................................................15

*Ry. Lab. Execs.' Ass'n v. Gibbons*,
448 U.S. 1301 (1980) ..............................................................................19

*S. Bay United Pentecostal Church v. Newsom*,
590 U.S. 965 (2020) ..............................................................................2, 10

*Sanchez v. Maher*,
560 F.2d 1105 (2d Cir. 1977)..................................................................12

*St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*,
131 F.4th 102 (2d Cir. 2025)...................................................................15

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*,
60 F.3d 27 (2d Cir. 1995) ........................................................................10

*Trump v. Carroll*,
2026 WL 1855059 (June 29, 2026)...........................................................5

iv

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
  578 U.S. 590 (2016) ....................................................................16

*United States v. Texas*,
  144 S. Ct. 797 (2024)....................................................................8

*Utica Mut. Ins. Co. v. Clearwater Ins. Co.*,
  906 F.3d 12 (2d Cir. 2018) .........................................................13

*Victorinox AG v. The B & F Sys., Inc.*,
  2015 WL 9256944 (S.D.N.Y. Dec. 15, 2015)...........................22

*Winter v. Nat. Res. Def. Council*,
  555 U.S. 7 (2008) ...........................................................................9

*In re World Trade Ctr. Disaster Site Litig.*,
  503 F.3d 167 (2d Cir. 2007) ................................................ 20, 21

**STATUTES**

28 U.S.C. § 1961(a) .......................................................................21

**RULES**

Sup. Ct. R. 16.3 .........................................................................2, 15

Sup. Ct. R. 44.2 .........................................................................3, 17

Fed. R. App. P. 8 (a)(1)(A) .............................................................9

Fed. R. App. P. 8(a)(1)(C) ...........................................................8, 9

Fed. R. App. P. 8(a)(2)(A) ...........................................................2, 9

Fed. R. App. P. 41(d)(4) ...............................................................15

Fed. R. Civ. P. 62 ........................................................................4, 14

v

## OTHER AUTHORITIES

@realDonaldTrump, Truth Social (Jun. 29, 2026, 11:16 AM),
https://truthsocial.com/@realDonaldTrump/posts/116834055569312013 ............6

Lyle Denniston, *Court Switches, Will Hear Detainee Cases*, SCOTUSBlog (June 29, 2007), https://www.scotusblog.com/2007/06/court-switches-will-hear-detainee-cases/ ...................................................................................17

Stephen M. Shapiro, et al., *Supreme Court Practice* (11th ed., 2019) ....................16

Steve Vladeck, *Petitions for Rehearing*, One First (Jul. 15, 2024),
https://www.stevevladeck.com/p/90-petitions-for-rehearing ...............................16

vi

Plaintiff-Appellee E. Jean Carroll ("Carroll") respectfully submits this memorandum in opposition to Defendant-Appellant Donald J. Trump's ("Defendant") motion for a stay or, in the alternative, an injunction pending appeal. Dkt. No. 15 ("Mot.").

## INTRODUCTION

After a nine-person jury found Defendant Donald Trump liable for sexual abuse and defamation, the district court denied his motion for a new trial. A unanimous Second Circuit panel affirmed the verdict and the full Court declined to reconsider that decision *en banc*. On June 29, 2026, the United States Supreme Court denied Defendant's petition for a writ of certiorari without dissent—an outcome that, as the parties had agreed and the district court ordered, entitled Carroll to "collect any moneys owed by Defendant to Plaintiff." Appx. 18, Stipulation and Order dated June 23, 2023 ("Stipulation and Order") ¶ 8.

But rather than accept the reality that he had lost, Defendant has engaged in a series of maneuvers trying desperately to forestall payment. Those attempts failed on July 8, when this Court denied Defendant's "emergency" request for a stay—his seventh in the related cases between these parties—permitting the district court to disburse the judgment.

That should have been the end of this case. But Defendant now demands yet another unprecedented remedy: an injunction pending appeal requiring Carroll to

return the funds awarded to her by a jury in 2023 to the Court Registry Investment System ("CRIS"), in the hope that the Supreme Court reverses its denial of certiorari, grants review, and then rules in Defendant's favor. This extraordinary request is procedurally improper, substantively meritless, and yet another example of Defendant's pattern of "slow-roll[ing] his defenses, asserting or inventing a new one each time his prior effort to delay the case fails." *Carroll v. Trump*, 590 F. Supp. 3d 575, 587 (S.D.N.Y. 2022) (Kaplan, J.).

First, Defendant failed to seek an injunction in the district court and cannot do so now for the first time on appeal. Fed. R. App. P. 8(a)(2)(A). More fundamentally, an injunction pending appeal is an extraordinary remedy reserved for only "the most critical and exigent circumstances." *S. Bay United Pentecostal Church v. Newsom*, 590 U.S. 965, 966 (2020) (Roberts, C.J., concurring). This is not such a case.

The district court correctly held that the Supreme Court's order denying certiorari was "the last word." Mot. at 9. While Defendant argues that his petition for rehearing of certiorari means that the Supreme Court is not "fully finished," Mot. at 2, the Supreme Court's own Rules state otherwise, explaining that a denial of certiorari "will not be suspended pending disposition of a petition for rehearing except by order of the Court or a Justice." Sup. Ct. R. 16.3. Moreover, the Supreme Court's standard for reconsidering a denial of certiorari—which requires "intervening circumstances of a substantial or controlling effect" or "other

2

substantial grounds not previously presented," Sup. Ct. R. 44.2—cannot possibly be satisfied here since there is no relevant recent case law and the only "intervening" circumstance is that Defendant wants Carroll to pay the money back.

But there is more. Plaintiff knew who she was dealing with when the jury rendered its verdict. For that reason, the parties' Stipulation and Order entered on June 23, 2023, explicitly provides that the judgment should be disbursed upon "a denial of a timely filed petition for writ of certiorari," which has now occurred. Stipulation and Order ¶ 8(b). The Stipulation and Order says nothing about a petition for rehearing, and Defendant cannot re-write the plain language of the parties' agreement.

When it comes to the remaining factors for granting an injunction, Defendant would not be "irreparably harmed" absent an injunction in any event. It is black letter law that "an injury compensable by money damages is insufficient to establish irreparable harm." *CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779, 781 (2d Cir. 2010). And contrary to Defendant's assertions, Mot. at 4-5, Carroll has placed the award in an account for her retirement. Finally, the balance of the equities and the public interest do not support an injunction that would both severely prejudice Carroll and reward Defendant's litigious gamesmanship.

The judgment here is final, the money has already been disbursed, and Carroll is entitled to keep it.

3

## BACKGROUND

On May 9, 2023, a jury returned a verdict finding that Donald Trump sexually abused E. Jean Carroll in 1996 and that he defamed her in October 2022. *Carroll v. Trump*, No. 22 Civ. 10016 (S.D.N.Y.) ("*Carroll II*"), ECF No. 174. The jury awarded Carroll $5 million in compensatory and punitive damages. *Id.* Defendant immediately appealed, claiming principally that the district court (Kaplan, J.) had erred in its evidentiary rulings.

The Federal Rules of Civil Procedure automatically stay execution of a money judgment for 30 days, after which the stay dissolves and a plaintiff is presumptively entitled to enforce the judgment. Fed. R. Civ. P. 62(a). Here, the parties agreed to a joint stipulation that instead provided that Defendant would deposit the funds into the registry of the district court, which the district court so-ordered on the same date. *Carroll II*, ECF No. 209; *Carroll II*, ECF No. 210 (Stipulation and Order).

According to the terms of that Stipulation and Order, Defendant's then-counsel deposited $5.55 million into the district court's registry on June 28, 2023. *Carroll II*, Minute Order, June 28, 2023. The Stipulation and Order provides as follows:

> After the latest of (a) the mandate issued by the Second Circuit in connection with the Appeal; (b) a denial of a timely filed petition for writ of certiorari to the Supreme Court (if any) in connection with the Appeal; or (c) upon the Supreme Court's granting of certiorari, an order of the Supreme Court in connection with the Appeal, Plaintiff

4

> may collect any moneys owed by Defendant to Plaintiff under the terms of the Judgment[.]

Stipulation and Order ¶ 8.

With respect to the underlying appeal, this Court affirmed the district court's judgment on December 30, 2024, finding that the district court "did not abuse its discretion in making any of the challenged evidentiary rulings." *Carroll v. Trump*, 124 F.4th 140, 178 (2d Cir. 2024) (*per curiam*). In the alternative, the panel held that even assuming the district court had in any way erred—"a proposition [the panel] rejected"—no "claimed error or combination of errors . . . affected Mr. Trump's substantial rights," once the "strength of Ms. Carroll's case" and "the record as a whole" were considered. *Id.*

On June 13, 2025, this Court denied rehearing *en banc*. Defendant filed a petition for a writ of certiorari with the Supreme Court on November 10, 2025. On June 29, 2026, the Supreme Court denied Defendant's petition for certiorari without comment or noted dissent. *Trump v. Carroll*, 2026 WL 1855059 (June 29, 2026).

On the morning of the Supreme Court's denial, Defendant made a post on Truth Social in which he made some of the same defamatory attacks on Carroll previously considered by the jury:



> **Donald J. Trump** ✓ ➕
> @realDonaldTrump
>
> Surprisingly, the Supreme Court declined to "review" a Fake Case brought against me by a woman I never met (Decades old celebrity photo line, standing with her husband, does not count!). I will continue the fight against this Weaponization and Lawfare Case against me, including the ridiculous claim of Defamation, with all of my power and strength. This Case is really against the United States of America, and all it stands for, and should never be allowed to happen to another President, or Candidate to be! New York State created a Law, for an instant speck of time, going back many decades, in order to wrongfully "nab" me. It was tailormade, and this Injustice cannot be allowed to stand! Thank you for your attention to this matter. President DONALD J. TRUMP
>
> **5.36k** ReTruths  **22.4k** Likes                     Jun 29, 2026, 11:16 AM

He promised to "continue the fight against this Weaponization and Lawfare Case against [him] . . . with all of [his] power and strength." @realDonaldTrump, Truth Social (Jun. 29, 2026, 11:16 AM), https://truthsocial.com/@realDonaldTrump/posts/116834055569312013.

Within minutes of that Truth Social post, Defendant's counsel contacted undersigned counsel to ask Carroll to consent to a further stay of enforcement of the judgment so that Defendant could file a petition for rehearing at the Supreme Court. In response to our explanation that Paragraph 8 of the Stipulation and Order provided for disbursement of the award owed to Carroll immediately upon denial of a petition

for certiorari, counsel for Defendant clarified that he was requesting that Carroll consent to a "new stay or continuance" of execution. SA.4.

Carroll declined to consent to further delay. Instead, she filed a motion to disburse the funds in the CRIS, *Carroll II*, ECF No. 233, which Defendant opposed, *Carroll II*, ECF No. 240. On July 8, 2026, the district court ordered the disbursement of the principal judgment, $5 million (as well as accrued post-judgment interest) from CRIS. *Carroll II*, ECF No. 241. The district court explained that the "plain language" of the Stipulation and Order "states that certiorari having been denied . . . plaintiff now is entitled to be paid," and that Defendant's argument otherwise "in effect [was] asking the Court to redraft [the Stipulation and Order] in his favor." SA.2-3. The district court emphasized that Defendant had been "stalling this case for years," and that the disbursement of funds "would not cause defendant irreparable harm." SA.6.

That same day (or on July 8), Defendant sought an "emergency" administrative stay with this Court pending the disposition of his present motion for a stay and/or injunction pending appeal.[1] Dkt. No. 8. Later that evening, this Court (Lee, J.) denied Defendant's motion for an administrative stay, citing the *Nken*

---

[1] Also on July 8, 2026, Defendant filed with the Supreme Court his petition for rehearing from the denial of certiorari. Mot. at 8.

7

factors. Dkt. No. 13.[2] Then, on July 10, 2026, Defendant filed the instant motion, seeking a stay pending appeal, or in the alternative, an injunction directing Carroll to return the funds to CRIS. Dkt. No. 15.

On July 14, 2026, the district court confirmed that the judgment had been disbursed to counsel for Carroll. *Carroll II*, Minute Order, July 14, 2026.

## ARGUMENT

**I.** **Defendant's Failure to Comply with Rule 8, Standing Alone, Justifies Denying Defendant's Request for an Injunction Mandating Return of the Disbursed Funds**

Defendant has failed to comply with Federal Rule of Appellate Procedure 8(a), which provides that a "party must ordinarily move first in the district court for" an order "granting an injunction while an appeal is pending." Fed. R. App. P. 8(a)(1)(C). Although Defendant indicated in his T-1080 form that "this request for relief [was] made below," Dkt. 15.1 at 1, that is not accurate. Defendant requested only a stay in the district court, which is a different form of relief than an injunction. *See Agudath Israel of Am. v. Cuomo*, 980 F.3d 222, 225 (2d Cir. 2020).

---

[2] While Defendant faults this Court for citing the *Nken* factors on a motion for an administrative stay, Mot. at 8, "the *Nken* factors are obviously on the court's radar, and unsurprisingly, they can influence" the decision. *United States v. Texas*, 144 S. Ct. 797, 799 (2024) (Barrett, J., concurring).

Now that Carroll has been paid, Defendant's request to stay the district court's disbursement order is for the most part moot.[3]

Defendant's stay request in the district court plainly does not satisfy the requirements of Rule 8(a) because stays pending appeal and injunctions pending appeal are dealt with separately under Rule 8. *See* Fed. R. App. P. 8(a)(1)(A), (C). Defendant offers no explanation for his failure to comply with this basic procedural requirement, and he has not shown that "moving first in the district court would be impracticable." Fed. R. App. P. 8(a)(2)(A). Indeed, he had nearly two weeks in which to do so following the district court's July 8 disbursement order.

## II. Defendant Has Failed to Carry His Heavy Burden to Justify the Injunction He Seeks

Although Defendant seeks an injunction from this Court requiring Carroll to return the disbursed funds to CRIS, an injunction is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). To obtain an injunction from a district court, the movant bears the burden of showing that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20. "To obtain a stay of a district

---

[3] Carroll has requested that the Clerk of Court clarify the methodology used to calculate the interest payment and release additional funds (if any) that may still be owed. To the extent Defendant continues to pursue a stay as to this small remaining amount, if any, it should be denied for the same reasons.

court's order pending appeal in this Court, more is required, including a 'strong showing that [the movant] is likely to succeed on the merits.'" *Agudath Israel of Am.*, 980 F.3d at 226 (quoting *New York v. U.S. Dep't of Homeland Sec.*, 974 F.3d 210, 214 (2d Cir. 2020)).

The instant motion seeks an even more drastic remedy—an injunction issued in the first instance by an appellate court. "Such a request demands a significantly higher justification than a request for a stay," *id.*, and is granted "only in the most critical and exigent circumstances" where "the legal rights at issue are indisputably clear," *S. Bay United Pentecostal Church*, 590 U.S. at 966 (Roberts, C.J., concurring).

While Defendant cites the standard for a prohibitory injunction and characterizes his requested relief as preservation of the "status quo," Mot. at 23, Defendant is in fact seeking a mandatory injunction that "command[s] some positive act"—here, compelling Carroll to return to CRIS the funds now in her retirement account. *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34 (2d Cir. 1995). In these circumstances, "the likelihood-of-success and irreparable-harm requirements become more demanding still, requiring that the plaintiff show a *clear or substantial* likelihood of success on the merits and make a *strong showing* of irreparable harm." *Daileader v. Certain Underwriters at Lloyds London Syndicate*

10

*1861*, 96 F.4th 351, 356 (2d Cir. 2024) (emphasis in original). As explained below, Defendant cannot satisfy even one aspect of these familiar standards.

### A. Defendant Is Unlikely to Succeed on the Merits

By the time the jury announced its verdict in May of 2023, Carroll and her counsel were painfully familiar with Defendant's "stalling" tactics. *See Carroll v. Trump*, 590 F. Supp. at 587. Accordingly, in exchange for obtaining a stay of execution pending appeal, Plaintiff insisted that Defendant agree that the judgment would be disbursed once the conditions set out in the Stipulation and Order were satisfied. Those conditions were satisfied when the Supreme Court denied Defendant's petition for certiorari. Stipulation and Order ¶ 8(b) (requiring disbursement upon "a denial" of Defendant's petition for certiorari). Defendant's arguments to the contrary lack merit.

*Text.* The parties provided that Carroll would receive the judgment after "*a denial of a timely filed petition for writ of certiorari to the Supreme Court.*" *Id.* (emphasis added). That is exactly what happened on June 29. As the district court observed, "the word 'final' does not appear in Subparagraph 8(b)" of the Stipulation and Order. SA.2. "[H]ad the parties wished to agree that the judgment would be payable only upon the denial of any petition for rehearing of the denial of a petition for certiorari, they easily could have expressed that intention." SA.2-3. But they

11

did not, and the plain language of the Stipulation and Order required disbursement. *See Sanchez v. Maher*, 560 F.2d 1105, 1108 (2d Cir. 1977).[4]

Defendant's own actions confirm that understanding: within minutes of the denial, he asked Carroll to consent to a "new stay or continuance" of execution—a request that would have been pointless if the Stipulation and Order already gave Defendant what he now claims it says.

**Structure.** The structure of Paragraph 8 further confirms this common-sense reading. Its three subparagraphs logically correspond to the three ways that appellate review of the judgment could end, each identifying a moment at which "Plaintiff may collect." (1) If Defendant did not seek certiorari, Carroll would collect upon this Court's mandate, ¶ 8(a). (2) If Defendant sought certiorari and it were denied, she would collect upon "a denial," ¶ 8(b). (3) If certiorari were granted, she would collect upon "an order of the Supreme Court in connection with the Appeal" that left the verdict intact, ¶ 8(c). What Paragraph 8 does not contain is any mention of the possibility that Defendant would petition for "rehearing" of certiorari.

Defendant leans heavily on Subparagraph 8(c), but unlike Subparagraphs 8(a) and 8(b), Subparagraph 8(c) opens with a condition precedent: "upon the Supreme Court's granting of certiorari." ¶ 8(c). Because that condition was not satisfied here,

---

[4] In his Motion, Defendant selectively quotes Subparagraph 8(b), omitting the word "a" from before "denial of a timely filed petition for writ of certiorari." Mot. at 13.

Subparagraph 8(c) never took effect. *Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, 906 F.3d 12 (2d Cir. 2018) ("A condition precedent is an act or event . . . which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises."). Defendant is mistaken to claim that this would mean that Subparagraph 8(c) has "no independent force." Mot. at 16. Had Defendant's petition for certiorari been granted, Subparagraph 8(c) would have governed. A provision is not surplusage merely because the contingency it was written for didn't come to pass.

This explains why "the latest of" language in Paragraph 8 cannot bear the weight that Defendant places on it. *See, e.g.*, Mot. at 16. Because more than one of the enumerated events could occur—and at different times—the parties needed to specify which one would trigger Carroll's right to collect. But while more than one of the events could occur, all three cannot: a petition for certiorari is either denied, ¶ 8(b), or granted, ¶ 8(c), but not both. Subparagraphs 8(b) and 8(c) therefore operate as separate, mutually exclusive pathways. The "latest of" language clearly refers to the later of the events that actually occur (here, a denial of a petition for certiorari), not to a moment at which no further event could theoretically take place.

Moreover, Defendant's proposed interpretation would create a significant surplusage problem of its own. *Manley v. AmBase Corp.*, 337 F.3d 237, 250 (2d Cir. 2003) (courts should avoid "interpretations that render contract provisions

13

meaningless or superfluous."). If Subparagraph 8(c) meant what Defendant says it means—namely that payment is not required, *despite* "a denial" of certiorari, so long as there remains even the remote possibility the Supreme Court might reconsider its decision—then the language in Subparagraph 8(b) providing for disbursement upon "a denial" of certiorari would be meaningless. Under Defendant's interpretation, Subparagraphs 8(a) and 8(c) together control when payment must be made. His interpretation further implies that 8(c) would *never* authorize release of funds so long as there were some theoretical possibility of granting certiorari. Presumably for this reason, Defendant has not even conceded that he would consent to payment if the Supreme Court denies his petition for rehearing. Basic principles of contract interpretation prohibit such an illogical result.

*Paragraph 10.* Paragraph 10 does not "contradict" the common-sense interpretation of Paragraph 8 that justifies the district court's disbursement order. Mot. at 14. Had Subparagraph 8(c) been triggered by a grant of certiorari by the Supreme Court and a subsequent reversal of the judgment, Paragraph 10 would have required the return of the escrowed funds to Defendant. But Paragraph 10 is not effective where "a denial" of certiorari that leaves the judgment intact has occurred and Subparagraph 8(b) is in effect. Indeed, the general rule is that judgments are collectible after a 30-day automatic stay, even while appeals are pending. *See* Fed. R. Civ. P. 62. In the exceedingly unlikely event that the Supreme Court grants

14

rehearing *and* rules in Defendant's favor, then (if necessary) Defendant can sue Plaintiff to recover the judgment, as Judge Kaplan has noted. SA.6; *see St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, 131 F.4th 102, 108 (2d Cir. 2025).

*Context.* Defendant argues that the Supreme Court's June 29 denial of certiorari is not "final" because he has filed a petition for rehearing. Mot. at 13. But this argument ignores both the Supreme Court's rules and the practical reality.

Supreme Court Rule 16.3 provides that "[t]he order of denial [of certiorari] will not be suspended pending disposition of a petition for rehearing except by order of the Court or a Justice." S. Ct. R. 16.3; *see also Clay v. United States*, 537 U.S. 522, 527 (2003) ("Finality attaches when this Court . . . denies a petition for a writ of certiorari[.]"). The Court's own rules thus contemplate that the case will continue in the lower courts without regard to whether a losing party files a petition for rehearing, an understanding that is also reflected in this Court's rules. *See* Fed. R. App. P. 41(d)(4). Put another way, an order denying certiorari is final the moment it is issued, regardless of whether or not the petitioner seeks rehearing. This Court has itself stated that "a petition for a writ of certiorari is resolved when the Court denies review," and "the finality achieved upon denial of certiorari is not delayed by a petition for rehearing of the certiorari denial." *Rosa v. United States*, 785 F.3d 856, 859-60 (2d Cir. 2015) (collecting cases and noting agreement of all eight

15

circuits to consider the issue); *accord Horton v. United States*, 244 F.3d 546, 551 (7th Cir. 2001) ("[A] petition for rehearing before the Supreme Court does essentially nothing[.]").

That makes sense. As the district court noted, successful petitions for rehearing are "rare birds." SA.3. Indeed, "the plain fact is that the Supreme Court seldom grants a rehearing of any kind of order, judgment, or decision." Stephen M. Shapiro, et al., *Supreme Court Practice* § 15.5 (11th ed., 2019). From the 2011 through 2016 Terms, the Court granted only three of the 3,875 rehearing petitions filed—0.08%. *Id.* at 9; *see also Bell v. Thompson*, 545 U.S. 794, 806 (2005) ("As a practical matter, a decision by this Court denying discretionary review usually signals the end of litigation."). And the cases in which it did so are plainly distinguishable from Defendant's case, because in each one, the order granting review was designed to allow the lower courts to consider the effect of an intervening decision from the Supreme Court. *Id.*[5] Here, Defendant's petition for rehearing does not ask the Supreme Court to "grant, vacate, and remand" in light of new

---

[5] *See Liberty Univ. v. Geithner*, 568 U.S. 1022 (2012) (remanding in light of *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 529 (2012)); *Johnson v. Alabama*, 136 S. Ct. 1837 (2016) (remanding in light of *Hurst v. Florida*, 577 U.S. 92 (2016)); *Kent Recycling Servs., LLC v. U.S. Army Corps. of Eng'rs*, 136 S. Ct. 2427 (2016) (remanding in light of *U.S. Army Corps. of Eng'rs v. Hawkes Co.*, 578 U.S. 590 (2016)); *see also* Steve Vladeck, *Petitions for Rehearing*, One First (Jul. 15, 2024) (at time of writing, last rehearing of denial of certiorari was granted in August 2018), https://perma.cc/EF98-Y969.

16

caselaw, but merely asks the Supreme Court to reconsider its denial of certiorari. Mot. at 7. To our knowledge, the Court has taken that step only once in the last 75 years, in *Boumediene v. Bush*, 551 U.S. 1160 (2007), dealing with national security issues—the first such reversal since *Hickman v. Taylor*, 328 U.S. 876 (1946), sixty years earlier, which recognized the federal work product privilege for attorneys.[6]

If successful petitions for rehearing are "rare birds," SA.3, then Defendant's pending petition cannot possibly get off the ground. The Supreme Court limits rehearing to two bases: "intervening circumstances of a substantial or controlling effect" or "other substantial grounds not previously presented." Sup. Ct. R. 44.2. Defendant's petition satisfies neither, since the only "intervening circumstance" it identifies is Defendant's "forthcoming petition in [the related case]." Supp. Appx. 6. But Defendant previously told the Court about that in a letter dated June 2, 2026, suggesting that "the Court may wish to consider the petitions together." Supp. Appx. 11. The sole ground for rehearing was therefore already before the Supreme Court when it denied certiorari.

### B.    Defendant Has Failed Utterly to Show Irreparable Harm

Defendant clearly cannot make "a *strong showing* of irreparable harm," *Daileader*, 96 F.4th at 356, which is yet another basis to deny this motion, *Grand*

---

[6] *See* Lyle Denniston, *Court switches, will hear detainee cases*, SCOTUSBLOG (June 29, 2007), https://perma.cc/5394-JANY.

*River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007). After all, what Defendant is objecting to is the payment of money, which is the classic example of an injury that is *not* irreparable. *See, e.g.*, *Daileader*, 96 F.4th at 358 ("Injury is not irreparable when 'a monetary award' may provide 'adequate compensation.'"); *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990) ("As we have noted, it is settled law that when an injury is compensable through money damages there is no irreparable harm.").[7]

This Court's decision in *CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779 (2d Cir. 2010), undercuts Defendant's position. There, the appellant argued that it would suffer irreparable harm because it would be "unquantifiably difficult" to recover certain escrow payments after they were made since "the recipients of the escrow monies will 'spend' whatever payments they receive, and could subsequently become insolvent, rendering any ultimate victory Pyrrhic." *Id.* at 781. This Court rejected that argument, calling it "conclusory" and "[in]sufficient to establish irreparable harm." *Id.* at 781-82; *see also Preble-Rish Haiti, S.A. v. Republic of Haiti*, 2023 WL 5803567, at *3 (S.D.N.Y. Sept. 7, 2023) (concerns that funds may be "immediately distributed" were "insufficient for the Court to conclude the money

---

[7] Defendant attempts to manufacture urgency by falsely claiming that Plaintiff "intends to give away money collected from President Trump." Mot. at 18. While it is none of Defendant's business how Carroll intends to use her award, the funds are being held in an investment account for her retirement.

18

judgment against [defendant] is an exception to the general rule that the economic harm of making payment on a judgment is not an irreparable injury").

The decision in *National Institutes of Health v. American Public Health Association*, Mot. at 18, doesn't help Defendant either. That case involved nonprofit plaintiffs at risk of dissolution, and the potential loss of billions of dollars of government funds. 145 S. Ct. 2658 (2025) (per curiam). Here, by contrast, not only has Carroll placed the funds in an investment account for her retirement, but this case does not implicate the public fisc—it concerns private litigants (and Defendant had already lost interim use of the funds because they were in the CRIS). Defendant's remaining cases are equally inapposite in that they involve potentially devastating regulatory orders that would have compelled the movants to "incur billions of dollars in unrecoverable compliance costs" or cost "hundreds of thousands" of jobs. *Nat'l Fed'n of Indep. Bus. v. O.S.H.A.*, 595 U.S. 109, 120 (2022); *see also Ry. Lab. Execs.' Ass'n v. Gibbons*, 448 U.S. 1301, 1305 (1980) (declining to stay injunction preventing loss of $75 million which may have been unrecoverable due to governmental sovereign immunity).

In the extraordinarily unlikely event that the Supreme Court grants the petition for rehearing and ultimately reverses the existing judgment, Defendant would have a remedy. SA.6. The remote possibility that Defendant might have to incur litigation

19

costs to recover funds from Carroll provides no basis for irreparable harm. *See Daileader*, 96 F.4th at 358.

### C. The Balance of the Equities Tips Decisively Against Granting Defendant's Motion

While Defendant asserts that an injunction would be a mere inconvenience for Carroll, Mot. at 20-21, that is not accurate. Further delay in this case would not only reward Defendant's gamesmanship, but would also inflict substantial harm on Carroll, who is 82 years old and has waited a very long time to receive her award. The present motion arises from Defendant's seventh appeal in these two related cases; it follows seven separate stay applications to this Court, and a further eight motions for a stay at the trial court.[8]

That delay has been costly. Injury to a plaintiff waiting to collect on a judgment "increase[s] in significance with the passage of time," *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007), particularly where the plaintiff is already "of advanced age," *Carroll v. Trump*, 635 F. Supp. 3d 229, 237 (S.D.N.Y. 2022). While the award has accumulated post-judgment interest at the statutory rate, that is a poor substitute for Carroll actually having the money the jury

---

[8] Dkt. No. 8; *Carroll v. Trump*, No. 24-644 (2d Cir.), Dkt. Nos. 125, 155; *Carroll v. Trump*, No. 23-1045 (2d Cir.), Dkt. Nos. 27, 139; *Carroll v. Trump*, No. 23-1146 (2d Cir.), Dkt. Nos. 27, 123; *Carroll II*, ECF Nos. 22, 240; *Carroll v. Trump*, No. 20 Civ. 7311 (S.D.N.Y.), ECF Nos. 47, 92, 185, 286, 313, 317.

20

awarded her to invest.[9] Defendant should not be permitted to "run the clock out" on Carroll's attempt to obtain compensation for "a serious wrong." *Id.*

Defendant comes before this Court with very unclean hands. Defendant has continued, even as recently as two weeks ago, to repeat his defamatory attacks against Carroll. As this Court has held, the record "supports the district court's determination that the degree of reprehensibility of Mr. Trump's conduct was remarkably high, perhaps unprecedented." *Carroll v. Trump*, 151 F.4th 50, 83 (2d Cir. 2025). Each such attack has "a domino effect," and subjects Carroll to "ongoing and prolific harassment as a result of these statements, including a multitude of death threats and other threats of physical injury." *Id.*

### D. The Public Interest Is in Carroll's Favor

As this Court held in the related Carroll case, "the public interest would not be served by further delay." *Carroll v. Trump*, No. 24-644 (2d Cir.), Dkt. 126 at 2. Not only is there "a public interest in having [] [p]laintiffs who might be entitled to recovery receive compensation while still living and able to use it to improve the quality of their lives," *In re WTC*, 503 F.3d at 170-71, but there also is significant public interest in the "finality" of litigation, *Barretta v. Wells Fargo Bank, N.A.*, 693

---

[9] For the last three years, the judgment has sat in CRIS and collected post-judgment interest pursuant to 28 U.S.C. § 1961(a) at the applicable rate of 4.72%. By contrast, if Carroll had invested it in a fund that tracked the S&P 500 index, it would have appreciated annually in the amount of 22.50%.

F. App'x 26, 28 (2d Cir. 2017).[10] "The public pays a price when litigants use up the courts' time with gamesmanship and repetition." *Victorinox AG v. The B & F Sys., Inc.*, 2015 WL 9256944, at *7 (S.D.N.Y. Dec. 15, 2015).

Defendant has lost before a jury, the district court, a unanimous Second Circuit panel, the full Second Circuit, *en banc,* and the Supreme Court of the United States. He agreed—in a signed stipulation—that Carroll could collect her judgment once his certiorari petition had been denied. That happened. Carroll should not have to wait any longer.

## CONCLUSION

For the foregoing reasons, the motion should be denied. Carroll reserves the right to seek attorneys' fees.

---

[10] Defendant's reliance on *Edelman v. Jordan*, 414 U.S. 1301, 1301 (1973) (Rehnquist, J., in chambers), Mot. at 21, is misplaced, since there, certiorari had already been granted, and the stay was intended to preserve the status quo as to aspects of the lower court's order that the Supreme Court intended to review.

Dated: July 20, 2026
      New York, New York

Respectfully submitted,

Roberta A. Kaplan
D. Brandon Trice
Maximilian T. Crema
KAPLAN MARTIN LLP
1133 Avenue of the Americas
Suite 1500
New York, New York 10036
(212) 316-9500
rkaplan@kaplanmartin.com
btrice@kaplanmartin.com
mcrema@kaplanmartin.com

*Counsel for Plaintiff-Appellee*

23

## CERTIFICATE OF COMPLIANCE

This brief complies with the length limits requirements of Fed. R. App. P. 27(d)(2)(A) because this brief contains 5,194 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in size 14 Times New Roman font.

Dated:  July 20, 2026                                    */s/ Roberta A. Kaplan*
      New York, New York                          Roberta A. Kaplan

                                            *Counsel for Plaintiff-Appellee*

## CERTIFICATE OF SERVICE

I, Roberta A. Kaplan, counsel for Plaintiff-Appellee and a member of the Bar of this Court, certify that, on July 20, 2026, a copy of the attached brief of Plaintiff-Appellee in opposition to Defendant-Appellant's motion for a stay or injunction pending appeal was filed with the Clerk through the Court's electronic filing system.

Dated:  July 20, 2026                              */s/ Roberta A. Kaplan*
      New York, New York                   Roberta A. Kaplan

                                   *Counsel for Plaintiff-Appellee*

25

# **<u>SUPPLEMENTAL APPENDIX OF EXHIBITS</u>**

Donald J. Trump's Petition for Rehearing..................................Supp. Appx. 1

Donald J. Trump's June 2, 2026 Letter to Clerk of the Supreme Court of the United States ........................................................................ Supp. Appx. 11

Supp. Appx. 1

No. 25-573

In the
# Supreme Court of the United States

PRESIDENT DONALD J. TRUMP,

*Petitioner,*

v.

E. JEAN CARROLL,

*Respondent.*

*ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT*

## PETITION FOR REHEARING

Michael Martinich-Sauter
 *Counsel of Record*
JAMES OTIS LAW GROUP, LLC
530 Maryville Centre Drive,
Suite 230
St. Louis, Missouri 63141
(314) 949-3018
michael.martinich-
sauter@james-otis.com

*Counsel for Petitioner*
*President Donald J. Trump*

July 6, 2026

**Supp. Appx. 2**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES........................................ ii

PETITION FOR REHEARING...................................1

RELEVANT BACKGROUND....................................1

REASONS FOR GRANTING REHEARING..............3

CONCLUSION ........................................................5

RULE 44 CERTIFICATE

**Supp. Appx. 3**

## TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*Carroll* v. *Trump*,
 49 F.4th 759 (2d Cir. 2022)...................................2

*Carroll* v. *Trump*,
 66 F.4th 91 (2d Cir. 2023).....................................2

*Carroll* v. *Trump*,
 88 F.4th 418 (2d Cir. 2023)...................................2

*Carroll* v. *Trump*,
 151 F.4th 50 (2d Cir. 2025)...................................2

*Carroll* v. *Trump*,
 175 F.4th 100 (2d Cir. 2026).................................2

*Trump* v. *Carroll*,
 292 A.3d 220 (D.C. 2023) ....................................2

*Trump* v. *United States*,
 603 U.S. 593 (2024).......................................1, 3-4

**Rules**

Sup. Ct. R. 44.2.........................................................3

**Other Authorities**

*Statement on the Assault Allegation by E. Jean
 Carroll*, Daily Compilation of Presidential
 Documents, National Archives (June 21, 2019), *at*
 https://www.govinfo.gov/content/pkg/DCPD-
 201900410/pdf/DCPD-201900410.pdf. ..................1

## PETITION FOR REHEARING

Pursuant to Rule 44.2, Petitioner President Donald J. Trump respectfully petitions for rehearing of this Court's June 29, 2026 order denying his petition for a writ of certiorari. Rehearing is warranted because President Trump will imminently file a petition for a writ of certiorari in *Carroll* v. *Trump*, No. 24-644 (2d Cir.) ("*Carroll I*"), which will present vital questions concerning Presidential immunity for official statements. Those questions are likely to bear on the proper disposition of *Trump* v. *Carroll*, No. 25-573 ("*Carroll II*"), due to the fact that Respondent improperly introduced and relied on those same official Presidential statements at trial in *Carroll II*. *See Trump* v. *United States*, 603 U.S. 593, 630-32 (2024). The Court should grant rehearing, and either grant the petition in this case, or hold it pending the disposition of the petition in *Carroll I*.

## RELEVANT BACKGROUND

Respondent has brought two related lawsuits against President Trump.

The first, *Carroll I*, seeks to impose defamation liability for official statements that President Trump made in 2019 while serving as President of the United States. The first statement in question appeared in an official public statement issued by the White House Press Office.[1] President Trump made the second statement during an official press availability on the South Lawn of the White House, in response to questions from the White House press pool. During

---

[1] *Statement on the Assault Allegation by E. Jean Carroll*, Daily Compilation of Presidential Documents, National Archives (June 21, 2019), *at* https://www.govinfo.gov/content/pkg/DCPD-201900410/pdf/DCPD-201900410.pdf.

the same press availability, President Trump also responded to media inquiries about a wide range of other topics of key national importance, including economic issues, foreign policy, national security, immigration, and nuclear non-proliferation.

*Carroll I* was delayed by threshold proceedings concerning Presidential immunity and whether the United States could be substituted as a party for President Trump. *See Carroll* v. *Trump*, 49 F.4th 759, 761 (2d Cir. 2022); *Carroll* v. *Trump*, 66 F.4th 91, 94 (2d Cir. 2023); *Trump* v. *Carroll*, 292 A.3d 220, 224 (D.C. 2023); *Carroll* v. *Trump*, 88 F.4th 418, 432 (2d Cir. 2023). After judgment was entered in *Carroll I*, the Second Circuit affirmed. *Carroll* v. *Trump*, 151 F.4th 50 (2d Cir. 2025) (per curiam). On April 29, 2026, the Second Circuit denied rehearing en banc, with three Circuit Judges dissenting. *Carroll* v. *Trump*, 175 F.4th 100 (2d Cir. 2026). President Trump's deadline to seek certiorari in *Carroll I* is July 28, 2026. President Trump will be filing that petition.

The second case brought by Respondent, *Carroll II*, is the one in which this Court denied certiorari on June 29, 2026. *Carroll II* arose from Respondent's later action concerning statements made by President Trump in 2022. President Trump's petition in *Carroll II* presented important evidentiary questions under the Federal Rules of Evidence. As the petition outlined, Carroll's trial was "propped up by a 'series of indefensible evidentiary rulings.'" Pet. 2. The petition sought review of whether the judgment could stand even though Respondent relied on evidence that was inadmissible according to President Trump.

Although *Carroll II* concerned later statements, Respondent improperly introduced and relied on President Trump's 2019 official statements at the *Carroll II* trial. Exhibits 1 and 2 admitted into

evidence at that trial were the 2019 official presidential statements at issue in *Carroll I.* Respondent testified about those statements and their alleged effect on her reputation during the *Carroll II trial.* Tr. 262:10-273:10. Respondent's expert witness in *Carroll II* likewise testified concerning the alleged reputational impact of those statements. Tr. 1129:10-1130:12, 1148:9-13. Further, Respondent's counsel emphasized the statements to the jury in her opening statement and summation. Tr. 24:16-25:4, 38:21-39:18, 1246:8-1247:1. In short, the two official Presidential statements that underlie *Carroll I* were an indispensable component of Respondent's case to the jury in *Carroll II.*

That use of official Presidential statements matters, because this Court has made clear that official Presidential acts may not be used as evidence to impose liability for other conduct. *Trump*, 603 U.S. at 630-32. The forthcoming petition in *Carroll I* will present the issue of whether the 2019 White House statements constitute protected official acts, which they do. Because those same statements were introduced and emphasized at trial in *Carroll II*, the disposition of *Carroll I* would bear on the proper disposition of *Carroll II.* For example, if the Court finds that those 2019 White House statements fall within the scope of Presidential immunity, which they do, then the statements should not have been admitted into evidence and emphasized to the jury in *Carroll II. Trump*, 603 U.S. at 630-32.

**REASONS FOR GRANTING REHEARING**

Rule 44.2 permits rehearing from the denial of certiorari when the petition is limited to "intervening circumstances of a substantial or controlling effect" or "other substantial grounds not previously presented." Sup. Ct. R. 44.2. That standard is satisfied here, as

**Supp. Appx. 7**

the President's forthcoming petition in *Carroll I* will present official-acts immunity questions that will overwhelmingly likely bear on the proper disposition of *Carroll II*.

The forthcoming *Carroll I* petition constitutes an intervening circumstance of substantial effect, and the interrelationship between *Carroll I* and *Carroll II* involves a substantial ground not previously presented in this case. *Carroll I* will present important questions concerning Presidential immunity for statements President Trump made in 2019, while serving as President, and through official White House channels. Those questions would bear on the proper disposition of *Carroll II*, because this Court has held that official presidential acts may not be used as evidence to impose liability for other conduct. *Trump*, 603 U.S. at 630-32. Thus, a disposition in *Carroll I* concerning the 2019 official statements would affect whether those very same statements could properly have been introduced and emphasized in a related case, *Carroll II*. *See id.*

That is a paradigmatic reason to at least hold a petition. When a forthcoming or pending case may affect the proper disposition of another petition, the Court may hold the related petition, and later resolve it in light of the lead case. Here, *Carroll I* is the direct vehicle for the official-acts immunity issue. *Carroll II* is the related petition in which the same official statements were used as evidence. Holding *Carroll II* for *Carroll I* would permit the Court to dispose of the two related matters in an orderly and consistent fashion.

To be sure, the decision below in *Carroll II*—and thus the *Carroll II* petition—focused on evidentiary errors under the Federal Rules of Evidence. However, the briefing in *Carroll II* before the Second Circuit

closed on May 1, 2024—two months before the Court decided *Trump* v. *United States*, which first recognized that Presidential immunity prohibits even the admission of evidence of immune conduct to prove liability for other conduct. Importantly, the reliance on immune acts at the *Carroll II* trial is part and parcel of the petition's central contention that the judgment followed a trial marred by improper evidence. As Judge Menashi explained, Respondent's case was "propped up" by a "series of indefensible evidentiary rulings." App.240A (Menashi, J., joined by Park, J., dissenting from denial of rehearing en banc). As a result of these erroneous rulings, "[n]o one can have any confidence that the jury would have returned the same verdict if the normal rules of evidence had been applied." *Id.* The forthcoming *Carroll I* petition bears on a related constitutional reason why evidence used at the *Carroll II* trial—the 2019 official Presidential statements—could not properly have been used to impose liability.

## CONCLUSION

For the foregoing reasons, the petition for rehearing should be granted. The Court should vacate its June 29, 2026 order denying certiorari, and either grant the petition for a writ of certiorari, or hold the petition pending the disposition of the forthcoming petition in *Carroll I*, which should be granted.

July 6, 2026                    Respectfully submitted,

Michael Martinich-Sauter
  *Counsel of Record*
JAMES OTIS LAW GROUP, LLC
530 Maryville Centre Drive
Suite 230
St. Louis, Missouri 63141
(314) 949-3018
michael.martinich-
sauter@james-otis.com

*Counsel for Petitioner*
*President Donald J. Trump*

**Supp. Appx. 10**

**No. 25-573**

In the
# Supreme Court of the United States

PRESIDENT DONALD J. TRUMP,

*Petitioner,*

v.

E. JEAN CARROLL,

*Respondent.*

*ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT*

**RULE 44 CERTIFICATE**

Pursuant to Rule 44.2, I certify that the PETITION FOR REHEARING of President Donald J. Trump is limited to intervening circumstances of a substantial or controlling effect and to other substantial grounds not previously presented, and that it is presented in good faith and not for delay.

Dated: July 6, 2026     */s/ Michael Martinich-Sauter*
Michael Martinich-Sauter
  *Counsel of Record*
JAMES OTIS LAW GROUP, LLC
530 Maryville Centre Drive
Suite 230
St. Louis, Missouri 63141
(314) 949-3018
michael.martinich-sauter@james-otis.com
*Counsel for Petitioner*
*President Donald J. Trump*

**Supp. Appx. 11**

## James Otis Law Group, LLC ───────────────────

530 Maryville Center Drive, Suite 230, St. Louis, Missouri 63141

June 2, 2026

Honorable Scott S. Harris
Clerk, Supreme Court of the United States
Washington, D.C. 20543

      Re:    *Trump* v. *Carroll*, No. 25-573 (*Carroll II*)

Dear Mr. Harris:

      I write to advise the Court that President Donald J. Trump intends to file a petition for a writ of certiorari in *Carroll* v. *Trump*, No. 24-644 (2d Cir.) (*Carroll I*), within the next month. Because *Carroll I* involves the same parties and overlaps with the President's pending petition for a writ of certiorari in *Carroll II*, the Court may wish to consider the petitions together. Like the pending petition in *Carroll II, Carroll I* arises from decisions by the Second Circuit, which recently denied rehearing *en banc* in *Carroll I* over the dissent of three judges. *See Carroll* v. *Trump*, 175 F.4th 100, 100-128 (2d Cir. 2026) (Menashi, J., joined by Livingston, C.J. and Park, J.).

                                        Respectfully,

                                        /s/ Justin D. Smith

                                        Justin D. Smith

                                        *Counsel for Petitioner President Donald J. Trump*

cc:
Roberta A. Kaplan
D. Brandon Trice
Maximilian T. Crema
Avita Anand
Kaplan Martin LLP
1133 Avenue of the Americas
Suite 1500
New York, New York 10036
rkaplan@kaplanmartin.com

*Counsel for Respondent E. Jean Carroll*