# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

E. JEAN CARROLL,

*Plaintiff-Appellee,*

v.

PRESIDENT DONALD J. TRUMP,

*Defendant-Appellant.*

No. 26-1840

## REPLY OF PRESIDENT DONALD J. TRUMP IN SUPPORT OF HIS MOTION FOR A STAY PENDING APPEAL AND/OR, IF NECESSITATED BY EVENTS, AN INJUNCTION PENDING APPEAL

Plaintiff obtained the denial of emergency relief through a representation she abandoned once the money was released. While the funds remained safely in CRIS, counsel assured this Court that they would be placed in an "interest-bearing account." After securing possession, Plaintiff disclosed that the funds were instead placed in a personal investment account for her retirement—and invoked the S&P 500 to justify keeping them there. Response at 18–21. That was not a clarification. It was a bait-and-switch on the precise assurance used to resist judicial intervention. Unlike "interest-bearing accounts," investments in the stock market are, by definition, "unsecured." Having obtained the money through one representation, Plaintiff cannot defeat an injunction with another.

1

That reversal confirms why the parties placed the funds under court control in the first place. More than three years ago, President Trump deposited more than $5.5 million with the district court, ensuring that Plaintiff would be paid in full, with interest, if she ultimately prevailed. In return, the funds would remain under court control until the Stipulation and Order determined who was entitled to them. Paragraph 8 governed when Plaintiff could collect. Paragraph 10 guaranteed that the deposited funds would be paid to President Trump if the judgment were reversed and set aside completely, as it should be.

Plaintiff received every protection she bargained for. President Trump did not. While his timely petition for rehearing remains pending before the Supreme Court, the district court erroneously released the entire amount, destroying the central protection afforded President Trump: a segregated, court-controlled fund available for immediate return if further Supreme Court proceedings altered the judgment. Plaintiff's subsequent bait-and-switch demonstrates that this was no theoretical injury. The funds are now subject to Plaintiff's whims. They are also now subject to the risk—inherent in any investment in the stock market—that they will decrease or be lost altogether.

Plaintiff's opposition compounds the problem by rewriting both the Stipulation and Order, as well as her own prior representation. She mistakenly treats the denial of certiorari as ending the inquiry, even though the Supreme Court has not

ruled on President Trump's timely rehearing petition. She erroneously dismisses Paragraph 8(c), even though a grant of rehearing could lead to a grant of certiorari and make that provision controlling, as should be the case. She also attempts to reduce Paragraph 10's court-controlled repayment mechanism to a future collection lawsuit—a materially weaker remedy than the one the parties negotiated.

The same opportunism infects Plaintiff's equitable arguments. When she needed to prevent emergency relief, she proffered that the funds would supposedly remain secure in an interest-bearing account. Now that the funds have been released, they are investments for her retirement, subject to the shifting equity markets, if that is even what they are invested into. What security exists if the account loses value, as investments are by definition subject to doing? Her shifting, unsworn representations are not enforceable and cannot substitute for the court-controlled protection required by the Stipulation and Order. Only an injunction directing immediate return to CRIS can restore the parties' bargain, prevent further gamesmanship, and preserve meaningful appellate relief.

## I.     Rule 8 Provides No Basis for Denying President Trump's Motion.

Plaintiff wrongly argues that, after the district court refused to stay disbursement, President Trump was required to return to that same court and ask it to order Plaintiff to give the money back. *Contra* Response at 8–9. But a party need not seek relief first from the district court when doing so would be impracticable *or*

futile. Fed. R. App. P. 8(a)(2)(A)(i); *Uniformed Fire Officers Ass'n v. de Blasio*, 973 F.3d 41, 46 n.8 (2d Cir. 2020). Here, it clearly would have been both impracticable *and* futile.

Returning to the district court would have been *impracticable* because time is critical. President Trump had already asked that court to stay any disbursement pending appeal. D.Ct. Doc. 240, at 14. The district court erroneously ordered disbursement without addressing that request. D.Ct. Docs. 241, 243. Faced with the imminent risk that the funds would leave CRIS, and may become irretrievable, President Trump immediately appealed and sought relief from this Court. Returning to the district court for substantially the same protection—which the district court had already refused—would have consumed critical time while the funds remained at risk. Such a return would have been impracticable.

The need for an injunction arose when the funds were transferred to Plaintiff while President Trump's Motion remained pending. See 2d Cir. Doc. 16. Plaintiff's subsequent bait-and-switch confirms why immediate appellate intervention was necessary: after resisting emergency relief by promising an interest-bearing account, she obtained the funds and disclosed a materially different arrangement—an investment in her account for retirement. Returning to the district court—which had already denied President Trump's request for a stay—would have served no purpose

4

while control over the funds and Plaintiff's stated plans for them were changing in real time. Rule 8 poses no obstacle to an injunction restoring the funds to CRIS.

## II.     The Equitable Factors Strongly Favor Interim Relief.

The equitable factors strongly favor relief because Plaintiff's conduct has vindicated the precise risk President Trump identified. The district court's disbursement destroyed the court-controlled protection established by the Stipulation and Order. Plaintiff then abandoned the assurance she used to resist emergency relief, a promise to place the funds in an "interest-bearing account," 2d Cir. Doc. 12.1 at 10, and placed the funds in a different, personal account beyond judicial control. Returning the funds to CRIS would preserve both parties' rights, impose no meaningful harm on Plaintiff, and prevent her shifting representations from defeating effective appellate relief.

### A.     President Trump is likely to prevail on the merits of this appeal, because distribution was impermissible under the plain text of the Stipulation and Order.

Plaintiff has no answer to Paragraph 8(c) of the Stipulation and Order. Paragraph 8 permits collection only "[a]fter the latest of" the specified appellate events. Stipulation ¶ 8. While President Trump's timely rehearing petition remains pending, Paragraph 8(c) can still become the later governing event if the Supreme Court grants rehearing and then grants certiorari, as should occur. Plaintiff's entire merits position depends on baselessly pretending that possibility no longer exists.

Plaintiff tries to evade Paragraph 8(c) by calling the grant of certiorari a "condition precedent" that "never took effect." Response at 12–13. That is circular. President Trump agrees that the third condition in Paragraph 8(c) had not yet occurred. The point is that that condition may occur in the future. If rehearing is granted and certiorari follows, the condition will be satisfied, and Paragraph 8(c) will control. Plaintiff never explains why the funds could be released before the Supreme Court decides whether a rehearing and certiorari are to be granted, because she is not able to do so. The funds should not have been released while Paragraph 8(c) remains an option, and that wrong has to be corrected.

Paragraph 10 makes the error unmistakable. It provides that, if the judgment is "reversed and set aside completely," the sums "originally deposited with the Court" "shall be paid to Defendant." Stipulation ¶ 10. Plaintiff wrongly says President Trump can sue later to recover the money. Response at 14–15. That is precisely the weaker remedy the Stipulation avoided. The importance of a court-held fund is now undeniable: Plaintiff secured possession by promising one arrangement, which would, arguably, keep the funds secure, and then adopted another after the money left judicial control, an investment without security. Paragraph 10 guarantees payment from the protected fund—not costly, time-consuming litigation over funds subject to Plaintiff's changing plans.

6

Plaintiff's surplusage argument also fails. Paragraph 8(b) governs whenever rehearing is not sought or is denied. Paragraph 8(c) governs if rehearing and certiorari are granted. Each provision retains independent force. Plaintiff's interpretation would instead let Paragraph 8(b) swallow Paragraph 8(c) before the Supreme Court acts, and would strip Paragraph 10 of the funds needed to give it effect. All of those outcomes are untenable.

The district court therefore erroneously released the funds before the governing provision could be known. President Trump is likely to prevail.

**B.    Plaintiff has not rebutted President Trump's showing of a risk of irreparable harm absent interim relief.**

Monetary loss is irreparable where funds "cannot be recouped" and are therefore "irrevocably expended." *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025). That risk is present here. Plaintiff has repeatedly stated that she intends to distribute money recovered from President Trump to third parties, creating a concrete danger that the funds will become unrecoverable before this appeal is resolved. Motion at 18 & App. A14; *compare CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779, 782 (2d Cir. 2010) (rejecting only "conclusory assertions" that escrow recipients might spend the funds). Plaintiff's actions and changing assertions underscore the risk of the funds disappearing.

Plaintiff's counsel now asserts that the funds remain intact in an investment account for Plaintiff's retirement. Response at 18–19. That unsworn assertion is not

7

evidence. *See, e.g., Large v. Our Lady of Mercy Med. Ctr.*, No. 94 Civ. 5986, 1998 WL 65995, at *3 (S.D.N.Y. Feb. 17, 1998). Plaintiff could have submitted a declaration identifying the account, its balance, its holdings, and any restrictions on transfer. She did not.

Worse, the assertion contradicts the representation Plaintiff used to resist an administrative stay, less than three weeks ago. When the funds could still be preserved in CRIS, counsel assured this Court that they would be placed in an "interest-bearing account." Plaintiff now says they are in a personal investment account for retirement, and invokes the S&P 500 to suggest that it is invested in equities. Response at 18–21. An investment account exposed to market performance is not the secure arrangement Plaintiff previously represented.

That reversal is devastating to Plaintiff's opposition. She defeated emergency relief with one assurance, obtained the funds, and changed the arrangement after judicial control was lost. Her latest promise that the money will remain available is unsupportable, she cannot have any idea of what the markets will do, and is therefore entitled to no weight. Having already repudiated one representation concerning the funds, Plaintiff cannot defeat an injunction by offering another.

Nor is market risk the only danger. Plaintiff has publicly announced plans to distribute money recovered from President Trump to third parties. Motion at 18 & App. A14. She is clearly susceptible to changing course again. Once transferred, the

funds may become difficult or impossible to trace and recover. Only a binding injunction—not another mutable assurance from counsel—can ensure that they remain available for disposition under the Stipulation and Order.

Plaintiff's new position also confirms that immediate return would cause no meaningful disruption. She claims the principal remains intact and is being held for retirement, not present need. The funds can therefore be returned immediately to CRIS, where they will remain secure, earn interest, and be available to whichever party ultimately prevails. President Trump faces irreparable harm absent relief; Plaintiff faces none from restoration of the bargain she made.

**C.    The balance of the equities supports President Trump's requested interim relief.**

The balance of equities is one-sided. Plaintiff obtained every protection afforded by the Stipulation and Order, and then secured possession of the funds through an assurance she promptly abandoned. Returning the money to CRIS would leave her fully secured and earning interest. Refusing relief would leave President Trump dependent on a litigant who has already changed her stated arrangement once the funds were beyond court control.

Plaintiff wrongly claims that interim relief would harm her by temporarily depriving her of the opportunity to invest the funds in the stock market. Response at 20–21. Congress's enactment of 28 U.S.C. § 1961 forecloses that argument. By enacting § 1961, "Congress has declared the post-judgment rate that adequately

9

compensates federal judgment creditors." *El-Tabech v. Clarke*, 616 F.3d 834, 841 (8th Cir. 2010). As a matter of federal law, the interest prescribed by § 1961 fully compensates Plaintiff for any delay in receiving the funds. Her hindsight comparison to the S&P 500 does not alter that conclusion, nor does it allow her to place the funds at risk of the kind of investments she chooses to make.

Plaintiff's unclean-hands argument is equally meritless. Response at 21. President Trump's public statements have no "immediate and necessary relation" to the issue before this Court: whether the district court erroneously released funds that the Stipulation required to remain protected. *Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 112 (S.D.N.Y. 2005). In actuality, the equities cut the other way: Plaintiff asks to retain the benefit of a court-approved security arrangement while repudiating the protection that arrangement afforded President Trump. Equity does not permit her to keep the bargain's benefits while discarding its limits.

Overall, Plaintiff identifies only speculative market upside from retaining personal control over funds she represented would be safely preserved. President Trump faces the loss of the specific court-controlled protection the parties negotiated. Equity does not reward a party for securing funds through one representation and retaining them under another. Returning the intact funds to CRIS preserves both parties' rights, and causes Plaintiff no cognizable prejudice.

10

**D.     The public interest supports President Trump's requested interim relief.**

The public interest favors enforcing court-approved stipulations and protecting the integrity of representations made to obtain judicial relief. Plaintiff should not be permitted to resist emergency intervention with one assurance, obtain the disputed funds, and then substitute a materially different arrangement after the Court relinquishes control over them. There is clear public interest in honest representations being made by litigants and their counsel, which is the opposite of how Plaintiff and her counsel conducted themselves here in executing the bait and switch, and attempting to obscure it in a footnote in the Response. Returning the funds to CRIS restores the negotiated security arrangement and preserves this Court's ability to grant effective relief.

In response, Plaintiff wrongly invokes "finality." Response at 21. But finality does not authorize a court to enforce the protections Plaintiff received while discarding those afforded to President Trump. Nor does it justify releasing the funds while a lawful Supreme Court rehearing petition remains pending, and Paragraphs 8(c) and 10 may still control. The public interest lies in honoring the bargain, preserving appellate jurisdiction, and ensuring that representations made to a court have consequences. An injunction serves each interest.

### III.  The Court Should Not Hold the Motion in Abeyance.

On July 27, 2026, Plaintiff filed a Rule 28(j) letter noting that the Supreme Court has distributed President Trump's petition for rehearing for conference, and asking that this Court hold the Motion in abeyance. *See* 2d Cir. Doc. 22.1. The Court should reject this unsupported request. No relevant circumstances have changed. The Supreme Court's distribution of the petition merely reflects that Court's ordinary processes; it does not reflect or affect the probability that the Supreme Court will grant the petition. If anything, further delay would leave the funds under Plaintiff's unilateral control since she abandoned the "interest-bearing account" representation she previously used to oppose emergency relief. The Court should decide President Trump's Motion based on the relevant equitable factors, all of which support interim relief.

### CONCLUSION

For the foregoing reasons, the Court should grant President Trump's Motion and enter an injunction pending appeal, requiring Plaintiff to return to CRIS all funds disbursed to her from the custody of the district court, as well as any other relief the Court views as necessary and proper, including to address any misrepresentations made to this Court.

Dated: July 27, 2026           Respectfully Submitted,

/s/ *Josh Halpern*
Josh Halpern
JH Legal PLLC
1100 H Street NW
Suite 840
Washington, DC 20005
(610) 405-5531
jhalpern@jhlegalpllc.com

*Counsel for President Donald J. Trump*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d) because it contains 2,592 words. This motion also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d) because it was prepared using Microsoft Word in 14-point Times New Roman, a proportionally spaced typeface.

/s/ *Josh Halpern*
Josh Halpern